IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REGIS INSURANCE COMPANY, | : |
| *Plaintiff*, | : C.A. No.: |
| vs. | : |
| | : **JURY TRIAL DEMANDED** |
| A.M. BEST COMPANY, INC., | : |
| *Defendant*. | : |

## COMPLAINT

### PRELIMINARY STATEMENT

For more than 100 years A.M. Best Company, Inc. ("**Best**") has been in the business of rating insurance companies. A.M. Best has become the bellwether of insurance company analysis. Agents, brokers, businesses and individuals look to the A.M Best rating as the definitive statement on the health of an insurance company. An insurer will rise or fall on its Best rating.

For more than 20 years A.M. Best has rated Regis Insurance Company ("**Regis**"), a small, privately held property and casualty insurer located in Wayne, Pennsylvania. Over that period of time, Regis has enjoyed a favorable Best financial strength rating ("**rating**"), owing in large part to its solid management and financial health. For all but two of the past ten years Best has given Regis a rating of B+ (Good) and, until now, Regis has enjoyed a stable place in the market for the insurance it sells.

In late 2009, Best advised Regis that it had, for the first time, considered the financial condition of Regis' parent company, Tiber Holding Corporation ("**Tiber**"), in connection with its rating of Regis, and that as a result, Best intended to reduce Regis'

rating to a C+ from B+, which would be a drop of three ratings (from B+ through B and B- to C+). Best also intended to change its outlook of Regis from "Stable" to "Negative."

Best's decision to drop Regis' rating because of its perceived issue relating to Tiber is entirely unfounded. Best purportedly based its rating decision on an outstanding consent judgment against Tiber in excess of $25 million that had been entered in favor of the Liquidation Bureau of the New York State Insurance Department. That judgment had existed for almost ten years and had never before been a factor in Best's rating of Regis.

Moreover, the status or financial condition of the parent, Tiber, has no bearing whatever on the ability of Regis to satisfy its coverage obligations to its insureds. Indeed by Best's own admission, it has found Regis itself to be financially healthy.

Tiber, which has been Regis' parent for over thirty years, has essentially no assets other than Regis stock and performs no other business. Significantly, the Liquidation Bureau of the New York Insurance Department cannot use the Tiber judgment to attach any Regis assets as a matter of law. It is probably for this reason that no effort has ever been made to enforce the judgment. Accordingly, the Tiber judgment has no effect on Regis and should not be considered by Best in its rating of Regis.

Knowing that the Tiber judgment could have no effect on Regis' financial strength and stability, Regis complained to Best that the proposed downgraded rating was unfair, arbitrary, unfounded, and inappropriate. After further alleged "investigation," Best revised Regis' rating to a B- and published that rating in January 2010. While one rating higher than the C+ rating Best had initially intended to assign Regis, the B- rating

2

is still significantly lower than Regis' prior rating. Regis again complained and appealed the revised rating to Best, but to no avail.

The B- rating has severely damaged Regis, both financially and reputationally, causing over $400,000 in lost business in less than six months, which is approximately 20% of Regis' gross written premium for a similar period of time in 2009. Best's consideration of, and its refusal to properly recognize the irrelevance of the Tiber judgment to Regis' financial strength and stability is the basis for this cause of action sounding in tortious interference (counts I-II), commercial disparagement (count III), defamation (count IV), and seeking declaratory relief (count V), as pled with more specificity below.

**The Parties, Jurisdiction and Venue**

1. Plaintiff Regis Insurance Company is a corporation organized under and subject to the laws of the Commonwealth of Pennsylvania with an office at 1325 Morris Drive, Suite 110, Wayne, Pennsylvania.

2. Regis is a property and casualty insurance company which has historically underwritten policies of insurance for medium-sized commercial risks. It has a net worth of approximately $10 million.

3. At all times relevant to this Complaint, Regis has been operated by, among others, Richard A. Di Loreto (**"Di Loreto"**), who presently serves as its President.

4. Defendant A.M. Best Company, Inc. is a corporation organized under the laws of New Jersey with a principal place of business at Ambest Road, Oldwick, New Jersey.

5. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) based upon diversity of citizenship between the parties. The amount in controversy, exclusive of costs and interest, exceeds the sum of $75,000.00.

6. This Court has subject matter jurisdiction over Count V of the Complaint under the Declaratory Judgment Act, 28 U.S.C. § 2201.

7. This Court may exercise personal jurisdiction over A.M. Best because Best is licensed to do and does business in the Commonwealth of Pennsylvania and has continuous and systematic contacts with the Commonwealth of Pennsylvania. In addition, Best's activities in the Commonwealth of Pennsylvania gave rise to the causes of action asserted in this Complaint.

8. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the activities giving rise to these causes of action occurred in this District and Regis suffered injury within this District.

**Background of Regis and Its Founder, Richard A. Di Loreto**

9. Regis was founded in 1979 by Richard A. Di Loreto and has had continuous operations in Pennsylvania since 1979.

10. Di Loreto, a veteran of World War II, has worked in the insurance industry for more than sixty years. He and his wife, Jeanne S. Di Loreto ("**Mrs. Di Loreto**"), have resided in Chester County, Pennsylvania for more than twenty years.

11. Regis' stock is held by Tiber Holding Corporation, a holding company whose only assets are Regis stock and the few remaining shares of a now defunct entity. Tiber has no other assets.

12. Tiber is owned by Mrs. Di Loreto, Mr. and Mrs. Di Loreto's daughter, Mary Ciullo, and the Di Loreto Foundation.

13. Di Loreto also formerly operated a now-defunct insurance company which was the subject of litigation in New York.

14. As a result of that litigation, a judgment now worth approximately $45 million was entered in New York against Mr. Di Loreto, Mrs. Di Loreto, and Tiber.

15. That judgment has been recorded in Pennsylvania against Mr. and Mrs. Di Loreto and Tiber.

**Regis' Relationship with A.M. Best**

16. Shortly after Regis' 1979 formation, Di Loreto contacted Best for the purpose of having Regis rated by that rating agency.

17. Di Loreto wanted Regis to be rated by Best because, in business since 1899, Best holds itself out as "the leading information provider for the global insurance industry."

18. Further, Best holds itself out as a "company devoted to issuing in-depth reports and financial strength ratings" and offering "the largest coverage of insurers and reinsurers in the United States, Canada, the United Kingdom and worldwide of any interactive rating organization."

19. Di Loreto was informed that an insurance company must be in business for five years before Best will rate the company.

20. After the requisite five years had passed, Di Loreto again contacted Best to have Regis rated.

21. Regis has been rated annually by Best for more than two decades.

22. During that entire time period, Regis has enjoyed a positive rating of no less than a B. For eight out of the past ten years, Regis has enjoyed a rating of B+ (Good).

**Best's Unfounded Downgrade of Regis**

23. On December 4, 2009, Di Loreto received a telephone call from Marc Leibowitz, Senior Financial Analyst at Best, who was joined on the call by Gerard Altonji, a Best Assistant Vice President.

24. The purpose of the call was to inform Di Loreto that Best had concerns regarding Regis' financial health because of the judgment against Tiber.

25. During that conversation Di Loreto explained that the judgment had been in place against Tiber for nearly ten years.

26. Di Loreto confirmed that at all times since the judgment was entered, the Pennsylvania Insurance Department, the main state regulator of Regis, has been aware of the fact that there is a judgment against Tiber in an amount in excess of the value of Regis' net worth.

27. Di Loreto attempted to explain that the Pennsylvania Insurance Department considers Regis to be financially sound notwithstanding any judgment against Tiber.

28. Di Loreto encouraged Leibowitz and Altonji to contact Stephen J. Johnson, Deputy Insurance Commissioner of the Pennsylvania Insurance Department, for further clarification regarding the Pennsylvania Insurance Department's position

regarding the irrelevance of the judgment against Tiber relative to Regis' financial strength and stability.

29. Leibowitz and/or Altonji stated an intention to speak with Johnson before making a final decision regarding Regis' 2009 Best rating.

30. On December 17, 2009, Di Loreto received a letter by fax from Altonji and Leibowitz (the **"December 17th Letter"**).

31. The December 17th letter was a formal notice of Regis' intended Best's rating. The letter informed Di Loreto that Regis was to be downgraded to a rating of C+ (Marginal). The letter was accompanied by a draft press release of Best's intended action.

32. The draft press release stated that "A.M. Best Co. has downgraded the financial strength rating to C+ (Marginal) from B+ (Good) and issuer credit rating to 'b-' from 'bbb-' of Regis Insurance Company (Regis)(Wayne, PA)."

33. The draft press release continued: "The outlook for both ratings has been revised to negative from stable."

34. The draft press release explained that the ratings action reflected a recent disclosure of "lack of financial flexibility at Regis' privately held parent, Tiber Holding Corporation (Tiber)(Wilmington, DE)."

35. The draft press release also stated that the ratings change reflected "Regis' poor operating performance."

36. Regis is not lacking in financial flexibility, is not dependent on Tiber for such flexibility, and does not require any capital contributions from Tiber.

7

37. Regis has enjoyed positive ratings in the past and has no history of "poor operating performance."

38. In fact, from 2005 through 2009, Regis had positive net income.

39. Also, from 2005 through 2009 Regis' surplus (the amount of assets in excess of liabilities) increased from $7.4 million to approximately $8.5 million, an increase of 13.33%.

40. Therefore, the draft press release contained untrue statements. Further, the draft press release demonstrated that the rating Regis was to receive was not based on fact.

41. Upon receipt of the draft press release and December 17th letter, Di Loreto immediately contacted Altonji and Leibowitz to protest that Regis was to be downgraded for reasons not based on an accurate assessment of Regis' financial strength and stability.

42. The same day he received the December 17th letter, Di Loreto had a telephone conference with Leibowitz, Altonji, and Regis' accountant, Earl W. Helstrom, to discuss it.

43. In the course of that conversation, Altonji explained Best's rating procedure, both generally and as it related specifically to Tiber and Regis, including what Best believed to be the effect of Tiber's judgment on Regis' rating.

44. Altonji also informed Di Loreto that he and Leibowitz had spoken with Stephen J. Johnson, the Deputy Insurance Commissioner Di Loreto had asked them to contact, and that they had reported the content of that conversation to the ratings committee. Specifically, Altonji stated that he had informed the committee of the Pennsylvania Insurance Department's position regarding the judgment against Tiber.

8

Nevertheless, Altonji informed Di Loreto that the ratings committee was not swayed and insisted on dropping Regis' rating from B+ to C+ based on the existence of the judgment against Tiber.

45. Altonji informed Di Loreto and Helstrom that although there was a ratings appeal process, a material change in circumstance would be required for any appeal to be heard.

46. Helstrom explained in accounting terms why the judgment against Tiber has no effect on Regis' financial strength and stability.

47. Helstrom clarified that if rated on its own under Best's own criteria, without regard to the judgment against Tiber, a rating of at least B+, and an outlook of at least "Stable," would be appropriate.

48. Altonji agreed with Helstrom, but explained that the committee was unwilling to disregard the judgment against Tiber.

49. Altonji suggested that if an independent legal opinion would be presented to explain why the judgment against Tiber has no effect on Regis' financial strength and stability, the committee might consider that as a basis for an appeal.

50. Between December 17, 2009 and January 12, 2010, various correspondence was sent between Regis and Best representatives, including an independent legal opinion from Linda Kaiser Conley, Esquire of the law firm of Cozen O'Connor. Several conversations also took place between Di Loreto and Best representatives.

51. On January 6, 2010, Leibowitz sent a fax to Di Loreto with a new draft press release and a document referred to by Best as a "President's letter," which when

executed by Regis would indicate Regis' acceptance of the intended rating and outlook. The information contained in the facsimile was similar in format to the December 17th letter, differing in substance only insofar as the final rating for Regis was B- (Fair) and not the C+ (Marginal) that had earlier been proposed by Best. Thus, the January 6, 2010 draft press release and letter stated that Regis would be downgraded to a rating of B- (Fair) from its former B+ (Good). The intended change of outlook from "Stable" to "Negative" remained.

52. After further correspondence, the rating and outlook information contained in the January 6, 2010 facsimile became Best's final position on Regis' rating and outlook.

53. Regis did not execute the "President's letter" it received from Best and has not accepted Best's revised rating and outlook.

54. Nonetheless, on January 12, 2010, Best issued an official press release which was the same in all respects but the date to the January 6, 2010 draft, announcing that Best's rating of Regis had been downgraded to B- (Fair) from B+ (Good) and its outlook was changed from "Stable" to "Negative."

55. On February 2, 2010, Best sent a fax addressed to a Regis employee, Jim Moll, containing the galley copy of Best's Ratings Report for Regis to be published in its 2010 edition of *Best's Insurance Reports*.

56. Between March 17 and March 18, 2010, Leibowitz and Altonji attempted to communicate with Di Loreto regarding Regis' participation in the "interactive rating process" and in particular inquiring whether Regis would furnish a copy of Regis' 2009

statutory annual statement. Best also reminded Di Loreto to file Regis' quarterly statement with Best within 45 days of the close of the first quarter of 2010.

57.  Di Loreto had a conversation with Altonji on March 18, 2010 in which Di Loreto inquired if the rating of B- and outlook of "Negative" could be revisited earlier than January 2011. Di Loreto was informed that it would not be "unless something dramatic happened in between."

58.  Di Loreto was also informed by Altonji that if Tiber's position did not change, Regis' rating would stay either where it was at B- or be further downgraded to C+ or worse.

59.  On April 30, 2010, Di Loreto wrote to Andrew Colaninno, a Vice President of Best, informing Best that as a result of the downgraded rating, Regis had lost $200,000 of renewal business in the first four months of 2010 and had lost "tens of thousands of dollars of new business."

60.  As of today, Regis has in fact lost over $400,000 in renewal business, and the loss continues to increase.

61.  Regis believes, and therefore avers, that based on all of Best's own ratings criteria, other than consideration of the financial condition of a parent company, Regis is entitled to a rating of at least B+ and an outlook of "Stable."

### COUNT I: REGIS v. A.M. BEST COMPANY
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

62.  Plaintiff incorporates the forgoing paragraphs by reference as though more fully stated in this count.

63. At the time Best issued its rating of B- and revised outlook from "Stable" to "Negative," which are predicated on false information, Regis was in the business of issuing insurance policies to third parties.

64. Best was and is aware that Regis engaged in this business.

65. At or about the time that Best issued its rating of B- and revised outlook from "Stable" to "Negative," some of those insurance policies were due for renewal.

66. Many policy holders and/or their insurance agents chose not to renew their existing policies with Regis because of Regis' B- rating and Negative outlook.

67. At or about the time that Best issued its rating of B- and outlook of Negative, Regis had numerous contracts with insurance agencies which produced business for Regis.

68. Best issued the B- rating and negative outlook with knowledge that the lower rating and outlook would have a negative impact on Regis' contractual relationships with its policyholders and its contractual relationships with its producers.

69. Best's issuance of an erroneous, unfair, unfounded, inappropriate, and arbitrary rating and changed outlook was and is calculated to thwart Regis' business relationships.

70. As a result of Best's actions, Regis has lost more than $200,000 in renewal business, and its losses continue to accrue.

**WHEREFORE**, Plaintiff Regis Insurance Company demands judgment in excess of $125,000 in compensatory and punitive damages, together with lawful interest and costs.

## COUNT II: REGIS v. A.M. BEST COMPANY
## TORTIOUS INTERFERENCE
## WITH PROSPECTIVE CONTRACTUAL RELATIONS

71. Plaintiff incorporates the foregoing paragraphs by reference as though more fully stated in this count.

72. At the time Best issued its rating of B- and revised outlook from "Stable" to "Negative," which are predicated on false information, Regis was in the business of issuing insurance policies to third parties.

73. Best was and is aware that Regis engaged in this business.

74. At or about the time that Best issued its rating of B- and Negative outlook, Regis was negotiating with certain third parties for those parties to produce insurance business for Regis.

75. Several of those third parties have chosen not to produce insurance business for Regis because of Best's actions.

76. Best issued the B- rating and Negative outlook with knowledge that its actions would have a negative impact on Regis' ability to conduct its business, including obtaining new business.

77. Best's issuance of an erroneous, unfair, unfounded, inappropriate, and arbitrary rating and changed outlook was calculated to thwart Regis' business relationships.

78. As a result of Best's actions, Regis has lost money and sustained damages of approximately $200,000 as a result of its inability to underwrite new policies of insurance.

**WHEREFORE**, Plaintiff Regis Insurance Company demands judgment in excess of $125,000 in compensatory and punitive damages, together with lawful interest and costs.

### COUNT III: REGIS v. A.M. BEST COMPANY
### COMMERCIAL DISPARAGEMENT

79. Plaintiff incorporates the foregoing paragraphs by reference as though more fully stated in this count.

80. Best published Regis' downgraded rating and change in outlook in a press release dated January 12, 2010, which was circulated for broad publication nationwide.

81. Best also published Regis' downgraded rating and change in outlook in its 2010 edition of *Best's Insurance Reports*.

82. In those publications, Best made false statements regarding Regis' financial condition, strength, and stability.

83. Best intended to cause or reasonably should have recognized that the publications would cause Regis pecuniary losses in the form of lost insurance policy renewal business and lost business opportunities.

84. Pecuniary loss did in fact result in the form of lost insurance policy renewal business and lost business opportunities to underwrite new policies of insurance.

85. The publications were defamatory *per se* because the false statements specifically targeted Regis' business practices and Regis' financial viability.

86. Best knew the publications were false and/or acted with reckless disregard for their truth or falsity, because at every step of the rating process Best ignored the evidence of Regis' positive and stable financial condition provided by Di Loreto, Helstrom, and others, including Conley on Regis' behalf.

87. Regis has suffered and continues to suffer damages both pecuniary and reputational as a result of these false publications.

**WHEREFORE**, Plaintiff Regis Insurance Company demands judgment in excess of $125,000 in compensatory and punitive damages, together with lawful interest and costs.

### COUNT IV: REGIS v. A.M. BEST COMPANY
### DEFAMATION-LIBEL

88. Plaintiff incorporates the foregoing paragraphs by reference as though more fully stated in this count.

89. Best published Regis' downgraded rating and change in outlook in a press release dated January 12, 2010, which was circulated for broad publication nationwide.

90. Best also published Regis' downgraded rating and change in outlook in its 2010 edition of *Best's Insurance Reports*.

91. Best published defamatory statements that harmed Regis' reputation as an insurance company in good financial condition, lowered Regis in the estimation of the insurance community, and deterred others from associating with Regis.

92. The statements were published in the context of reporting the status of Regis' financial condition and were unwarranted and unsupported by the information available to Best.

93. The communications clearly identified Regis.

94. All recipients of the publications understood that Best considered Regis to be rated at a level of B- (Fair) and to have a Negative outlook.

95. Best knew the publications were false and/or acted with reckless disregard for their truth or falsity, because at every step of the rating process Best ignored the

evidence of Regis' positive and stable financial condition provided by Di Loreto, Helstrom, and others, including Conley on Regis' behalf.

96.   Regis suffered damages as a result of this publication, including loss of reputation, lost renewal business and lost business opportunities.

**WHEREFORE**, Plaintiff Regis Insurance Company demands judgment in excess of $125,000 in compensatory and punitive damages, together with lawful interest and costs.

### COUNT V: REGIS v. A.M. BEST COMPANY
### DECLARATORY JUDGMENT

97.   Plaintiff incorporates the foregoing by reference as though more fully stated in this count.

98.   An actual controversy exists within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201, between Regis and Best, entitling Regis to a declaration as described below.

99.   There is a judgment against Tiber, which is the parent of Regis.

100.  The judgment is not against Regis.

101.  Regis is regulated by the Pennsylvania Insurance Department.

102.  The Pennsylvania Insurance Department considers Regis to be a viable, financially healthy insurance company. The Department believes that Regis has adequate capital, reserves, and liquidity to meet its obligations to its policyholders regardless of Tiber's financial condition. Accordingly, the judgment against Tiber does not have an effect on Regis' financial strength and stability from the standpoint of its regulating body.

103.  Furthermore, even if the Liquidation Bureau of the New York State Insurance Department were to attempt to collect upon its ten-year-old debt and Tiber

were driven into bankruptcy, Regis believes and therefore avers that it will be able to continue to operate without the Pennsylvania Insurance Department imposing regulatory action such as receivership or liquidation.

104. According to communications between Best representatives and Regis representatives, including but not limited to the January 12, 2010 press release and information that has been published in *Best's Insurance Reports,* Best erroneously and arbitrarily takes the position that Regis' financial condition is negatively affected by Tiber's financial situation.

105. However, Tiber's financial situation has no impact upon Regis.

106. A declaration regarding the effect of Tiber's financial situation is required to resolve this dispute between the parties.

107. A declaration that Regis is entitled to a Best financial strength rating of at least B+ and an outlook of "Stable" is required to resolve this dispute between the parties.

**WHEREFORE,** Plaintiff Regis Insurance Company respectfully requests this Court to enter an Order: (i) declaring that Tiber's financial condition does not have a negative impact on Regis' financial strength and stability under any circumstances; (ii) declaring that Best's current B- financial strength rating and Negative outlook for Regis are based upon erroneous information and Best's arbitrary position must be publicly retracted by Best immediately; (iii)  declaring that Regis is entitled to a Best financial strength rating of at least B+ and an outlook of at least Stable; (iv) awarding costs and all reasonable attorney's fees in connection with the prosecution of this action; and (v) awarding any other such relief that the Court deems reasonable, equitable and appropriate.

Respectfully submitted:
**HAINES & ASSOCIATES**

*[signature]*

CLIFFORD E. HAINES (PA 09882)
chaines@haines-law.com
KATHLEEN A. MILSARK (PA 30995)
kmilsark@haines-law.com
DANIELLE M. WEISS (PA 201067)
dweiss@haines-law.com
1835 Market Street
Suite 2420
Philadelphia, PA 19103
(t) (215) 246-2200
(f) (215) 246-2211
*Attorney for Regis Insurance Company*

Date: June 30, 2010

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.

Respectfully submitted:
**HAINES & ASSOCIATES**

*[signature]*

CLIFFORD E. HAINES (PA 09882)
chaines@haines-law.com
KATHLEEN A. MILSARK (PA 30995)
kmilsark@haines-law.com
DANIELLE M. WEISS (PA 201067)
dweiss@haines-law.com
1835 Market Street
Suite 2420
Philadelphia, PA 19103
(t) (215) 246-2200
(f) (215) 246-2211
*Attorneys for Regis Insurance Company*

Date: June 30, 2010