**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

REGIS INSURANCE COMPANY,        :

           :    C.A. No. 10-3171

       *Plaintiff,*       :

       vs.            :

           :   **JURY TRIAL DEMANDED**

A.M. BEST COMPANY, INC.,       :

           :

       *Defendant.*     :

## PRE-TRIAL MEMORANDUM OF PLAINTIFF REGIS INSURANCE COMPANY

Plaintiff Regis Insurance Company ("Regis"), by and through its undersigned counsel, hereby files this Pre-Trial Memorandum in accordance with Fed.R.Civ.P. Rule 16 and Local Rule 16.1(c).

## I.    STATEMENT OF NATURE OF CASE AND COURT'S JURISDICTION

Plaintiff Regis brings this civil action alleging two claims to be tried: (i) defamation; and (ii) commercial disparagement. Originally, the complaint alleged five counts, three of which have been dismissed. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because there is complete diversity among the parties and the amount in controversy exceeds $75,000. Regis Insurance Company is a Pennsylvania Insurance Company. A.M. Best Company, Inc. is a New Jersey corporation.

## II.    STATEMENT OF FACTS

### A.    Background on the Parties.

1.    Regis Insurance Company

Regis Insurance Company, Inc. ("Regis") is a property and casualty insurance company operating out of offices in Wayne, Pennsylvania. Regis is owned by a holding company, Tiber

Holding Corporation ("Tiber").  Tiber's lone asset of value is Regis.  Tiber is dormant and its only function is to hold Regis and a few other shell corporations that are no longer operating companies.

Regis underwrites commercial policies of insurance.  It has operated in a niche market for over 30 years.  Regis is operated by Richard A. Di Loreto, who is the over 90 year-old President of the company and has been at its helm for the vast majority of its existence.  There was a brief period of time in 2009-early 2010 in which someone other than Mr. Di Loreto served as the President of the company.  Mr. Di Loreto is currently the President of Regis.  Regis has been rated by A.M. Best Company, Inc. ("A.M. Best" or "Best") every year since the mid-1980's.

2.    A.M. Best

In business since 1899, Best holds itself out on its website as "the leading information provider for the global insurance industry."  Further, Best describes itself as a "company devoted to issuing in-depth reports and financial strength ratings" and offering "the largest coverage of insurers and reinsurers in the United States, Canada, the United Kingdom and worldwide of any interactive rating organization."  Indeed, it is considered the bellwether of insurance company analysis.  Agents, brokers, businesses and individuals look to an insurance company's A.M. Best rating as the definitive statement on the financial health of a particular insurance company.  Representatives of A.M. Best have conceded in this litigation that they are aware that an insurance company's viability in the marketplace will rise or fall on its Best rating.

A.M. Best's rating process involves one annual meeting with the entity to be rated and a review of materials such as balance sheets, financial statements, filings with the company's regulating authority and any other written material requested by A.M. Best at the meeting.  A.M. Best analysts take the information provided and apply various published (and some proprietary) formulae and methodologies to the information in order to develop a rating for the entity.  The

2

rating will include a financial strength rating, a credit issuer rating and a predictive outlook for the coming year.  See, Ex. H, Preface from 2010 Best's Insurance Reports.   After a preliminary analysis has been completed by the analytical team, it is presented to a Peer Review Committee comprised of senior A.M. Best executives and the analytic team.  A vote is taken as to the appropriate rating to be given to the insurance company based on the analysis.

A.M. Best analyzes an insurance company's financial strength ("FSR") and its ability to meet its ongoing obligations to its insureds.  This rating is based upon a review of a company's balance sheet, operating performance and business profile.  In connection with this rating, Best engages in both a "top-down" and "bottom-up" analysis to assess sources of risk to a rated entity. This analysis includes consideration of risk as a result of activity at the parent company.  This would include an assessment of whether the parent company can place a call on the capital of the insurance company subsidiary/affiliate.  Best strives to analyze only reasonable risk to the rated company.  Far-fetched risk is not supposed to be part of the analysis.

One component of the rating is the assignment of a Best's Capital Adequacy Ratio ("BCAR score").  The BCAR score involves a quantitative review of an insurance company's risk-adjusted capitalization.  The higher a company's BCAR score, the more financially healthy the company is considered to be by A.M. Best's standards.

Using Best's published methodology for Understanding BCAR in 2009, Regis' score would have been A++ in January 2010.  In fact, Regis' BCAR score has been in the A++ range consistently since 2004.  A++ is the highest possible BCAR score.

### B.    Regis' Rating History Was Positive Until 2010.

It is undisputed that over the decades in which Regis has been rated by Best, Regis' has enjoyed positive ratings.  From 2000-2009, Regis was never given an FSR of less than a B.  In 8 out of 10 of those years, Regis was rated B+ (Good).  Regis was consistently rated at that level

from 2005-2009.  However, Regis was downgraded to B- in January, 2010.  This rating

assignment was the culmination of Best's annual review of Regis, which began in November,

2009.

      **C.**    **A.M. Best Downgraded Regis in 2010.**

            1.    For the First Time Since Regis Had Been Rated By Best, Best Requested
                Tiber's Financial Statement In Connection with Regis' 2010 Annual
                Rating Analysis.

Regis' 2010 rating analysis began with a meeting on November 12, 2009 at Best's offices

with Regis' then-president, Jim Moll and comptroller, Sharon Rinaldo.  This meeting was the

first (and only) meeting with Best in Regis' history that Mr. Di Loreto did not attend.  During

that meeting, a request was made for Regis to produce a financial statement for its parent

company, Tiber.  This was the first time Best had a financial statement for Tiber.  Best has been

aware of the relationship between Regis and Tiber since at least 2000 (as noted in Best'

Insurance Report on Regis of that year).

Following the meeting, Marc Liebowitz, the Best ratings analyst following Regis,

reiterated the request for a copy of Tiber's audited financial statement.  Best acknowledges this is

the first written request ever made by them for Tiber's audited financial statement in the over

twenty year history of rating Regis.  A copy of Tiber's audited financial statement was

immediately provided to Best.  Because of a clerical error at Best, the financial statement did not

reach the property and casualty analytic team until approximately December 3, 2009, although it

had been date stamped as received by the life/health rating division on November 16.

Tiber's audited 2008 financial statement reflects that Tiber is insolvent.   According to

the footnotes in the statement, there are two judgments against Tiber.  One of the judgments was

entered by consent and has grown in value to over $40 million including interest.  This judgment

was entered against Tiber in 2001 arising out of a lawsuit involving a now defunct insurance

company in New York, once operated by Di Loreto.  The judgment is held by the New York Department of Insurance Liquidation Bureau ("judgment holder" or "Liquidator").   Tiber was that company's parent as well.  Thus, Tiber has been (technically) insolvent since that time.  The judgment is and always has been a matter of public record.

Regis has always disclosed to Best, and to any insurance authority to which it was required to report, that Tiber is its parent, and A. M. Best has acknowledged this fact in each of its Best's Insurance Reports.  Further, Regis' annual statement, which is filed each year with insurance departments in every state in which it does business, reflects that Regis' tax return is filed as a consolidated return with its parent, Tiber.  A copy of this statement is provided to A.M. Best each year in connection with the rating analysis.

2.    A.M. Best Accuses Mr. Di Loreto of Misrepresenting Tiber's Financial Condition for Years.

On December 4, 2009, one day following receipt of Tiber's audited financial statement, Gerard Altonji and Marc Liebowitz (A. M. Best's supervisory analyst and primary analyst, respectively, responsible for conducting the ratings analysis of Regis) called Mr. Di Loreto. They were upset by what they learned from the financial statement about Tiber's financial condition.  In the call, they accused Mr. Di Loreto of being a liar. Mr. Di Loreto steadfastly denied having deceived Best.  Indeed, there is no proof in Best's file that such information about Tiber had ever been requested.  In this conference call, as well as in others that took place throughout December 2009, Mr. Di Loreto took the position that he had not misrepresented Tiber's condition and that Tiber's financial condition had no impact at all on Regis.  There were several teleconferences between Mr. Di Loreto and the Best analytic team between December 4, 2009 and December 14, 2009.

3.     A.M. Best Looks to the Pennsylvania Insurance Department for More
       Information, But Then Disregards It.

Unlike an ordinary business that may be seized to satisfy the debts of its parent company,

an insurance company cannot be touched without permission of the regulating authority.  Mr. Di

Loreto informed Mr. Altonji and Mr. Liebowitz that Stephen Johnson, Deputy Insurance

Commissioner of the Pennsylvania Insurance Department would confirm that Pennsylvania

would not allow the Liquidator to seize Regis to satisfy Tiber's debts.  Accordingly, Mr. Di

Loreto urged Mr. Altonji and Mr. Liebowitz to speak to Mr. Johnson.  Their notes indicate that

they, along with their superiors, spoke with Mr. Johnson on December 11, 2009.  Mr. Johnson

confirmed that Regis could not be seized by the New York Liquidation Bureau in order to satisfy

Tiber's debt.[1]  A second conversation between Best and Mr. Johnson took place on January 5,

2010.  Mr. Johnson also dismissed concerns that Regis could be seized in this conversation.

Mr. Johnson provided the Best team with information about the Tiber judgment and the

regulator's perspective on the impact of that judgment on Regis.  From the Pennsylvania

Insurance Department's position, Regis was a financially viable company, was not in need of

special supervision and there was no concern about Tiber's debt.  A.M. Best did not contact the

judgment holder for information.

4.     The Peer Rating Committee Met to Rate Regis on December 14, 2009, and
       Altonji Alone Voted to Maintain Regis' 2009 Rating.

The A.M. Best Peer Rating Committee ("PRC") met to review Regis on December 14,

2009 and voted to downgrade Regis from B+ to C+ (4 rating levels lower, a rating downgrade of

extraordinary magnitude).  Although they were displeased with the dire picture of Tiber's

---

[1]      Mr. Johnson disclosed in this conversation that the New York Liquidation Bureau had effectively
blocked a potential sale of Regis when it refused to take the proceeds of the sale in exchange for satisfaction of the
total debt.  Understandably, the potential buyer refused to purchase Regis if it could not do so without this
encumbrance.

financial condition, an internal A.M. Best memorandum suggests that even in the face of Tiber's audited financial statement results, Altonji and Liebowitz believed that Regis was still financially sound and should receive a financial strength rating of B+ for the year 2010 with a stable outlook, and made this recommendation to A. M. Best's Property and Casualty Peer Rating Committee (PRC).  The PRC disagreed.

Because the rating was so drastically downgraded, the PRC requested that the rating be reviewed by the Corporate Ratings Committee ("CRC"), which ratified the C+ rating assignment on December 16, 2009.  A president's letter was issued to Regis reflecting the rating decision.

5.      Regis Appealed the Rating Decision.

When Mr. Di Loreto was made aware that Regis was to be downgraded so substantially, he initiated an appeal of the C+ rating.  In support of the appeal, he hired Linda Kaiser Conley, Esquire of Cozen O'Connor (the Philadelphia law firm) and a former Commissioner of the Pennsylvania Department of Insurance, to write an opinion letter to Best stating why Regis could not be seized to satisfy Tiber's debts and as such was not impacted by Tiber's theoretical financial inflexibility.  Ms. Conley wrote a letter to Mr. Altonji dated December 20, 2009 explaining Regis' position.  Mr. Di Loreto also enlisted assistance from Regis' longtime outside accountant, Earl W. Helstrom.  There was a substantial exchange of correspondence that subsequently went back and forth between Mr. Di Loreto, Ms. Conley, Mr. Earl Helstrom and representatives from A. M. Best.

On January 6, 2010, a more senior ratings committee reviewed Regis' appeal and changed the rating from C+ to B-.  Notwithstanding Regis' legitimate requests to raise the rating from B- to B+, supported by Regis' demonstrably strong capitalization and very high BCAR score, Best published its new rating for Regis, which was B-.  Ex. A.  Because this was a downgrade, according to Best policy, a press release was issued announcing the decreased rating.

Ex. A.  The press release stated that "A.M. Best Co. has downgraded the financial strength rating to B- (Fair) from B+ (Good) and issuer credit rating to 'b-' from 'bbb-' of Regis Insurance Company (Regis) (Wayne, PA)."  The press release goes on to state "the outlook for both ratings has been revised to negative from stable."  The press release further indicated that "the downgrade was meant to reflect a recent disclosure of lack of financial flexibility at Regis' privately held parent, Tiber Holding Corporation (Tiber) (Wilmington, DE).  The downgrade was also meant to reflect "Regis' poor operating performance."

> 6.     Regis Tirelessly Attempted to Convince A.M. Best to Reconsider the B-Rating.

Following the publication of the rating, Mr. Di Loreto continued to seek what he felt were justified changes in the rating report.  At Mr. Di Loreto's request, Stephen Johnson wrote a letter to A. M. Best representatives memorializing his stated position during their telephone conversations.  Best's failure to accept Mr. Johnson's reassurance is a clear departure from its stated methodology, which unequivocally states that Best defers in all circumstances to a company's regulating authority.  As a representative of the Pennsylvania Insurance Department, Stephen Johnson speaks for Regis' regulating authority.  Mr. Di Loreto also wrote directly to Arthur Snyder, President of A.M. Best and Andrew Colannino, another Best senior executive.  A.M. Best was unconvinced.

**D.     Regis Has Lost Substantial Business As a Result of the Downgrade.**

Regis continues to accrue underwriting loss as a result of the downgrade.  Since January 2010, many of Regis' policyholders have stopped renewing their policies.  Certain brokers who used to direct clients to Regis policies no longer continue to do business with Regis.  Some have stated that it is because of Regis' B- rating.

E.      **Regis Attempts to Mitigate Loss.**

Notwithstanding these losses, Regis continues to operate.  To meet its underwriting

requirements, it has lowered its standards for applications and now insures greater risks than it

would have in other times.  Regis also filed this lawsuit in attempts to recover the money it has

lost and in attempt to restore its rating to B+.

III.    **STATEMENT OF DAMAGES**

Regis seeks compensatory damages consisting of its lost income occasioned by the

publications of these false statements about its poor financial condition, which have caused many

of its long-standing insureds to refuse to do further business with Regis.  Regis also seeks

compensation for the loss of its reputation in the insurance community.

IV.     **WITNESSES**

Plaintiff anticipates calling the following witnesses at trial.  Plaintiff reserves the right to

supplement this list up to and including at the time of trial.

    1.      Gerard Altonji
            Ambest Road
            Oldwick, New Jersey 08858
            (908) 439-2200

Mr. Altonji is the A.M. Best senior employee in charge of analyzing Regis in preparation for its

2010 Rating.  He is expected to testify to facts regarding liability, including but not limited to the

Ratings Process, this history of the relationship between Regis and A.M. Best, Regis' past rating

history, Regis' position in the marketplace from the ratings agency perspective, Regis' empirical

financial health, contact with Regis during the 2010 ratings process, Regis' appeal from the

ratings process, the 2010 press release and its contents, Altonji's position as the ratings analyst

regarding Regis' rating in 2010, Best's efforts to learn of Tiber's financial condition before the

2010 rating, Best's efforts to collect outside information to refute its concerns from sources such as Stephen Johnson.

2.      Marc Liebowitz
        Ambest Road
        Oldwick, New Jersey 08858
        (908) 439-2200

Mr. Liebowitz is the A.M. Best junior employee responsible for analyzing Regis in preparation for its 2010 Rating.  He is expected to testify to facts regarding liability, including but not limited to the Ratings Process, this history of the relationship between Regis and A.M. Best, Regis' past rating history, Regis' position in the marketplace from the ratings agency perspective, Regis' empirical financial health, contact with Regis during the 2010 ratings process, Regis' appeal from the ratings process, the 2010 press release and its contents, Best's efforts to learn of Tiber's financial condition before the 2010 rating, Best's efforts to collect outside information to refute its concerns from sources such as Stephen Johnson.

3.      Matthew Mosher
        Ambest Road
        Oldwick, New Jersey 08858
        (908) 439-2200

Mr. Mosher is an A.M. Best senior executive.  He is also the person designated by Best as the person most knowledgeable of the facts and circumstances supporting Best's defenses in this case. Mr. Mosher was the chair of the CRC.  He is expected to testify to facts regarding liability, including but not limited to the Ratings Process and methodologies, Regis' past rating history, Regis' position in the marketplace from the ratings agency perspective, Regis' empirical financial health, Regis' appeal from the ratings process, the 2010 press release and its contents, Best's efforts to learn of Tiber's financial condition before the 2010 rating, Best's efforts to collect outside information to refute its concerns from sources such as Stephen Johnson.

10

4.      Andrew Colannino
        Ambest Road
        Oldwick, New Jersey 08858
        (908) 439-2200

Mr. Colannino is an A.M. Best senior executive.  Mr. Colannino was a member of each of the

ratings committees that reviewed Regis in 2010.  Mr. Colannino is expected to testify to facts

regarding liability, including but not limited to the Ratings Process and methodologies, Regis'

past rating history, Regis' position in the marketplace from the ratings agency perspective,

Regis' empirical financial health, Regis' appeal from the ratings process, the 2010 press release

and its contents, Best's efforts to learn of Tiber's financial condition before the 2010 rating,

Best's efforts to collect outside information to refute its concerns from sources such as Stephen

Johnson.  Mr. Colannino is also expected to give a unique perspective on the history between

Regis and A.M. Best, as before he was promoted to his current position, he was the senior

analyst on the team responsible for analyzing Regis each year and making recommendations to

the ratings committee. Mr. Colannino has long-standing knowledge of Regis' history and

performance.

5.      Anthony Diodato
        Ambest Road
        Oldwick, New Jersey 08858
        (908) 439-2200

Mr. Diodato is an A.M. Best senior executive.  Mr. Diodato was the chair of the original 2010

rating committee for Regis.  He also served on each of the subsequent reviews of Regis' 2010

rating before the press release was published in January 2010.  He is expected to testify to facts

regarding liability, including but not limited to the Ratings Process and methodologies, Regis'

position in the marketplace from the ratings agency perspective, Regis' empirical financial

health, Regis' appeal from the ratings process, the 2010 press release and its contents, Best's

efforts to learn of Tiber's financial condition before the 2010 rating, Best's efforts to collect

outside information to refute its concerns from sources such as Stephen Johnson.

      6.      Sharon Rinaldo
                 1325 Morris Dr.
                 Wayne, Pennsylvania 19087
                 (610) 647-1280

Ms. Rinaldo is the Comptroller at Regis.  She also attended the meeting in autumn 2009 which

began the process for Regis' 2010 rating.  Ms. Rinaldo is expected to testify to facts regarding

liability and damages, including but not limited to what transpired at the autumn 2009 meeting

that took place in Regis' offices with A.M. Best, communications with A.M. Best regarding

Tiber, Regis' financial performance as evidenced in Regis' 2010-2012 Annual Reports, Regis'

financial health in January 2010, performance trends at Regis since January 2010, Regis' long-

standing history of adequate capitalization and a lack of need to obtain outside financial support,

Regis' current financial condition, Regis' compliance with Pennsylvania Insurance Regulations,

Preparation of Regis' annual statement, Regis' attempts to mitigate its damages.

      7.      Earl W. Helstrom
                 5923 Colgate Street
                 Philadelphia, Pennsylvania 19120
                 (215) 728-1230

Mr. Helstrom was Regis' outside accountant in January 2010.  He is expected to testify to facts

regarding liability and damages, including but not limited to communications with A.M. Best

regarding Tiber, Regis' financial performance as evidenced in Regis' 2010-2012 Annual

Reports, Regis' financial health in January 2010, performance trends at Regis since January

2010, Regis' long-standing history of adequate capitalization and a lack of need to obtain outside

financial support, Regis' current financial condition.

8.      Linda Kaiser Conley, Esquire
        Cozen O'Connor
        1900 Market Street
        Philadelphia, PA 19103

Ms. Conley is an attorney who represented Regis in connection with Regis' appeal of its rating.

Ms. Conley is expected to testify to facts regarding liability, including but not limited to her

communications with A.M. Best and her efforts to assist Regis in connection with the 2010

Rating.


9.      Stephen Johnson, Deputy Commissioner
        Pennsylvania Insurance Department
        Office of Corporate and Financial Regulations
        1326 Strawberry Square
        Harrisburg, Pennsylvania 17120
        (717) 783-2142

Mr. Johnson is a Deputy Commissioner for the Pennsylvania Insurance Department.  He is in

charge of corporate and financial regulation.  Mr. Johnson is expected to testify to facts

regarding liability and damages, including but not limited to Regis' compliance with

Pennsylvania Insurance Regulations, Regis' financial health from the perspective of its principal

regulating authority in January 2010 and after, communications with A.M. Best on Regis' behalf,

the Pennsylvania Insurance Department's opinion regarding Regis' fitness to do business in

Pennsylvania despite Tiber's financial condition, Regis' position in the marketplace within the

universe of Pennsylvania Insurance Companies, A.M. Best's position in the marketplace, Regis'

reputation in the insurance community.

10.     Richard A. Di Loreto
        1325 Morris Dr.
        Wayne, Pennsylvania 19087
        (610) 647-1280

Mr. Di Loreto is the founder of Regis and its current President.  Mr. Di Loreto is expected to

testify to facts regarding liability and damages, including but not limited to the history between

Regis and A.M. Best, Regis' history and profitability before 2010, Regis' business structure,

Regis' target market, Regis' historic financial performance and condition, the relationship

between Regis and Tiber, the circumstances surrounding Tiber's insolvency, communications

with A.M. Best regarding Tiber, Regis' financial performance as evidenced in Regis' 2010-2012

Annual Reports, Regis' financial health in January 2010, performance trends at Regis since

January 2010, Regis' long-standing history of adequate capitalization and a lack of need to

obtain outside financial support, Regis' current financial condition, Regis' appeal of the 2010

rating, Regis' attempts to mitigate its damages.

11.     Michael Cohen
        Cohen Strategic Consulting
        17 Hughview Lane
        Yardley, Pennsylvania 19067

Mr. Cohen is an expert witness hired to testify on Regis' behalf.  Mr. Cohen is expected to give

expert testimony regarding the A.M. Best Ratings Process, A.M. Best's Ratings Methodologies,

A.M. Best's departure from those methodologies, A.M. Best's position in the marketplace, the

proper weight to have been given to Tiber's insolvency under the circumstances, the

consequences to Regis associated with the publicity associated with a substantial downgrade by

A.M. Best.

## V.      SCHEDULE OF EXHIBITS

A schedule of exhibits is attached as Exhibit A. Plaintiff reserves the right to supplement this list up to and including at the time of trial.

## VI.     TRIAL TIME

Trial of this matter will take 5-7 trial days.

## VII.    OUTSTANDING ISSUES

As of the time of the filing, Regis is unaware of any issues that may arise out of motions in limine that may be filed by A.M. Best.  There are no motions currently pending before the Court.

Respectfully submitted:

**HAINES & ASSOCIATES**

___/s/ Clifford E. Haines_____
CLIFFORD E. HAINES (PA 09882)
DANIELLE M. WEISS (PA 201067)
Haines & Associates
1835 Market Street
Suite 2420
Philadelphia, PA 19103
(215) 246-2200 (phone)
(215) 246-2211 (fax)
*Attorneys for Plaintiff Regis Ins. Co.*

Dated: April 30, 2013

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| REGIS INSURANCE COMPANY, | : | |
| | : | C.A. No.: 10-3171 |
| *Plaintiff,* | : | |
| vs. | : | |
| | : | |
| A.M. BEST COMPANY, INC., | : | |
| | : | |
| *Defendant.* | : | |

**CERTIFICATE OF SERVICE**

I, Danielle M. Weiss, Esquire hereby certify that I have caused this foregoing *Pre-Trial Memorandum of Plaintiff Regis Insurance Company* to be filed electronically on this day.  It is available for reviewing and downloading from the ECF System, and will be served electronically on all counsel.

Date:   April 30, 2013

> /s/Danielle M. Weiss
> DANIELLE M. WEISS (PA 201067)
> Email: dweiss@haines-law.com
> Haines & Associates
> 1835 Market Street - Suite 2420
> Philadelphia, PA 19103
> Telephone:  215-246-2200
> Fax:    215-246-2211
> *Attorney for Plaintiff, Regis Ins. Co.*