## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REGIS INSURANCE COMPANY :
:
vs. : No. 10-3171
:
A.M. BEST COMPANY, INC. :
_____:

### DEFENDANT A.M. BEST COMPANY, INC.'S MOTION IN LIMINE
### TO EXCLUDE REGIS' PROPOSED TRIAL EXHIBITS 83, 84 AND 85

Regis Insurance Company ("Regis") seeks to introduce Trial Exhibit No. 83 (Renewal Policies Lost through September 2010); Trial Exhibit No. 84 (Renewal Policies Lost from September, October, November); and Trial Exhibit No. 85 (Renewal Policies Lost), as evidence at trial. (See Certification Stephanie R. Wolfe, Esq. "Wolfe Cert." Exhibit "Ex." A.)  Trial Exhibit Nos. 83 and 84 appear to be summary charts created by Regis setting forth each insurance policy that it claims was not renewed as a result of AM Best's ratings downgrade. (Wolfe Cert. Ex. B and C.)  Trial Exhibit No. 85 consists of approximately 24 emails dated between January 14 and November 19, 2010.[1] (Wolfe Cert. Ex. D.)  Regis seeks to introduce these emails presumably as evidence that certain of its insureds opted not to renew their insurance policies with Regis as a result of the ratings downgrade.

The emails contained in Trial Exhibit No. 85 are not admissible under the Federal Rules of Evidence ("FRE") because they constitute hearsay and often, double hearsay under FRE 801 and do not otherwise fall within the exceptions to the Hearsay Doctrine.  Moreover, even if the emails were otherwise admissible, only nine of them possibly relate to the non-renewal of a policy as a result of the ratings downgrade.  The remaining emails contain no such suggestion.

---

[1] The remaining documents, namely, RIC002123, RIC002138, RIC002134-2137 and RIC002148 are either duplicates or summaries of other emails already contained in the Trial Exhibit.

In fact, some of the emails contain representations that the agents are not concerned about and/or have no plans to not renew policies with Regis.

The summary charts contained in Trial Exhibit Nos. 83 and 84 are inadmissible because they do not meet the standard required for admission under FRE 1006.  Specifically, the documents that the charts purport to summarize are not sufficiently voluminous so as to require it, the information contained therein is not supported by admissible evidence, the charts are inaccurate and misleading, and Regis is unable to establish a proper foundation for them.

**A.**      **Trial Exhibit No. 85 Is Inadmissible Under The Hearsay Doctrine**

Hearsay is "a statement other than one made by the declarant while testifying at [a] trial or hearing, offered in evidence to prove the truth of the matter asserted." FRE 801.  Hearsay is generally not admissible unless it falls within the exceptions identified under the FRE or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress. FRE 802.  The FRE recognize a number of exceptions to the hearsay rule regardless of whether the declarant is available as a witness.  FRE 803.

In this case, the documents contained in Trial Exhibit No. 85 are clearly hearsay.  They are statements, not made by a declarant testifying at trial, which are being introduced to prove the truth of the matter asserted therein; namely, that policy holders opted not to renew policies with Regis because of the ratings downgrade.  Thus, the documents are only admissible if they fall within one of the hearsay exceptions.  The only exception that could be argued to apply is the Records of Regularly Conducted Activity exception, which excludes from hearsay:

A record of an act, event, condition, opinion, or diagnosis if:

> (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

FRE 803(6).  The documents contained in Trial Exhibit No. 85 do not meet this exception.

As an initial matter, to qualify for the FRE 803(6) exception, the records of regularly conducted activity must be that of the entity proffering them as evidence.  Indeed, the basis for the exception is the recognition of an unusual reliability of business records that are supplied by systematic checking, regular reliance upon them, and a duty to make an accurate record as part of a continuing job or occupation. See, annotations to FRE 803(6).  Here, the information in the emails was not recorded in the regular course of Regis's business and the supplier of the information, the insured, cannot be said to have been acting in the regular course of business.  As a result, there is no assurance of accuracy in the  records and the exception does not apply.

Notwithstanding that the emails are not Regis's records, they also were not sent by someone with knowledge of the event documented in the email.  This requires "a particularized inquiry as to whether the declarant – the composer of the email – possessed personal knowledge of the information in the email."  In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, 2012 WL 85447, *3 (E.D. La. January 11, 2012).  In this case, the relevant content of the emails are purportedly the insured's reasons for not renewing the policy with Regis.  The insured, however, did not write the email.  Thus, the declarant has no personal knowledge as to

the reasons the insured decided not to renew the policy.   Only the insured has personal knowledge of those reasons.

Second, these documents were not maintained in the regular course of Regis's business. This requires an analysis as to "whether the producing defendant had a policy or imposed a business duty on its employer to report or record the information within the email." Id.  Regis has not produced any evidence demonstrating that it was part of its regular business activity to inquire with agents as to the reasons why policies were not renewed and to maintain those responses as business records.   It was only in anticipation of and in connection with this litigation that Regis began inquiring as to the basis for non-renewals.  This is evident by the fact that before Regis had sent any of its inquiries regarding non-renewals, it had threatened A.M. Best with litigation should Best downgrade Regis. (Wolfe Cert. Ex. E.)  See also later discussion regarding DiLoreto.

Third, "it must be the producing defendant's regular practice to send or receive emails that record the type of events documented in the email." Id.  "This requires proof of a policy of the producing defendant to use email to make certain types of reports or to send certain types of communications." Id.   Richard DiLoreto, the President of Regis, testified that every year policyholders do not renew policies with Regis for whatever reason. (Wolfe Cert. Ex. F at 133:25-134:4.)  There was no practice in any previous years of contacting these policyholders or their agents to obtain the reasons the insured decided not to renew the policy and to maintain records of those reasons.  This only started in January 2010 in anticipation of this lawsuit.  Mr. DiLoreto admits that the emails contained in Trial Exhibit No. 85 were obtained and compiled for the purpose of determining how much business Regis lost as a result of the downgrade in the rating. (Wolfe Cert. Ex. F at 132:24-133:12.)  Specifically, Mr. DiLoreto admits that he asked

one of Regis' employees, Karen Standen, to compile the emails for the purpose of identifying non-renewals related to the AM Best ratings downgrade. (Wolfe Cert. Ex. F at 133:3-7.)  Thus, making a record of the reasons for non-renewal was not a regular practice of Regis.

Fourth, "a custodian or qualified witness must attest that these conditions have been fulfilled."  Regis is unable to provide this certification.  Its President has already conceded that the collection of the information related to the reasons for non-renewal was not a regular business practice and that he asked Ms. Standen to compile the emails for the purposes of this lawsuit.  Moreover, no one at Regis can certify that he or she has personal knowledge of the reasons various insureds opted not to renew policies with Regis.

Fifth, the court must consider whether the particular email should be excluded due to concerns over lack of trustworthiness. Id.  In fact, courts have held that "whether evidence is admissible under Rule 803(6) is chiefly a matter of trustworthiness." United States v. Wells, 262 F.3d 455, 462 (5th Cir. 2001).  Moreover, "a document prepared after the events leading to the litigation took place, and for litigation purposes, without any independent indication of reliability is often inherently unreliable and may be excluded." Ho Myung Moolsan, Co., Ltd. v. Manitou Mineral Water, Inc., 2010 WL 4892646, *9 (S.D.N.Y. Dec. 2, 2010).

The documents contained in Trial Exhibit No. 85 are inherently untrustworthy.  As previously noted, virtually all of the emails constitute double hearsay; see below discussion. These documents were also compiled after this litigation was threatened and/or commenced at the behest of Regis's President.  The information was sought for the purpose of attempting to inflate or support Regis's potential damage claims.  There is no record of Regis attempting to obtain this typed information from its insureds prior to this lawsuit.  Even if the insured did consider the ratings downgrade in its decision to not renew, there is no way of determining from

the emails whether that was the sole or even primary reason for the decision.  Furthermore, there is no way of knowing whether the agent had personal knowledge or was merely speculating that the ratings downgrade may have been the reason for the non-renewal.

As a result, Trial Exhibit No. 85 is inadmissible hearsay for which there is no exception under the Federal Rules of Evidence.

Even if the documents could be admitted under an exception, they all present "double hearsay" or "hearsay within hearsay".  Namely, not only is the email itself offered for the truth of its contents, and thus, hearsay, but also the relevant statements within the emails (those related to the reason that the policy was not renewed) are hearsay.  "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." FRE 805.

In this case, Regis cannot satisfy the first level of hearsay either.  Specifically, Regis cannot demonstrate that the email was made at or near the time the insured decided not to renew the policy or that the declarant had personal knowledge of the reasons the insured decided not to renew.  Regis also cannot demonstrate that the declarant sought and/or maintained information related to the reasons for non-renewals in the ordinary course of business or that it maintained records of those reasons.  Finally, the sparseness of the record related to the relationship and communications between the agents and insureds and the agents and Regis make these statements highly untrustworthy.

Finally, the documents contained in Trial Exhibit No. 85, even if they were not hearsay, do not support Regis's position that policyholders opted not to renew policies as a result of the ratings downgrade.  None refer to the press release.  A closer look at the Exhibit reveals a total of 24 emails between Regis and various agents.  Of those emails, nine could be argued to present

evidence that a policy was not renewed and that the decision not to renew was related to the ratings downgrade: RIC002112, 2113, 2114, 2121, 2122, 2124-2127, 2128, 2129 and 2130.[2] The remainder of the emails contain no suggestion that a policy was not renewed as a result of the ratings downgrade: RIC002115-2120, 2131-2133, 2139-2147.   As a result, they are not relevant as evidence that insureds opted not to renew policies as a result of the ratings downgrade or that Regis suffered any damages related thereto.   In fact, some of the emails contain representations from the agents that they are not concerned about the ratings downgrade and do not anticipate that it will impact their business with Regis. See, RIC002117, 2118, 2119.

**B.     Trial Exhibit Nos. 83 and 84**

Plaintiff's proposed Trial Exhibits Nos. 83 and 84 appear to be summary charts created by Regis purportedly to identify the insurance policies that were not renewed with Regis between January 2010 and November 2010.[3] (Wolfe Cert. Ex. B and C.)   The charts are not dated. However, based on the manner in which the information is provided and a memo of Karen Standen, dated November 19, 2010, it is apparent that they were created in or about October and November 2010 by Ms. Standen at the direction of Richard DiLoreto. (Wolfe Cert. Ex. D, RIC002111.)   Thus, the charts were created nine months after Regis threatened legal action against AM Best and after the litigation was commenced in June 2010.  (Wolfe Cert. Ex. E).

The admissibility of summary charts is governed by FRE 1006 which allows "the contents of voluminous writings which cannot conveniently be examined in court to be presented in the form of a chart, summary or calculation."   FRE 1006.   This Rule creates an exception to

---

[2] Incidentally, the email bates stamped no. RIC002121 would have had nothing to do with the ratings downgrade. The agent states that the insured wanted a company with an "A" rating.  Regis had only a "B+" rating before the downgrade.  Thus, that insured would have sought a different insurer regardless of the downgrade.

[3] The chart is entitled "Renewal Policies lost due to the A.M. Best rating"

FRE 1002, which requires that originals be used to prove the content of writings, recordings and photographs. See, United States v. Milkiewicz, 470 F.3d 390 396 (1st Cir. 2006).

For summary evidence to be admissible, its proponent must properly authenticate it by satisfying four requirements. "First, the documents (or recordings or photographs) must be so 'voluminous' that they 'cannot conveniently be examined in court by the trier of fact.'" United States v. Bray, 139 F.3d 1104, 1109 (6th Cir. 1998) (quoting United States v. Seelig, 622 F.2d 207, 214 (6th Cir. 1980), "That is, the documents must be sufficiently numerous as to make comprehension 'difficult…and inconvenient." Id.  Second, the proponent of the summary must also have made the documents available for examination or copying, or both, by other parties at a reasonable time and place. Id.  Third, the proponent of the summary must establish that the underlying documents are admissible in evidence.  In other words, if the underlying documents are hearsay and not admissible under any exception, a chart or other summary based on those documents is likewise inadmissible. Id.  The same principle would render inadmissible a summary based on documents that are inadmissible for any other reason, such as irrelevancy, unfair prejudice, or lack of authenticity. Id.

Fourth, a summary document must be accurate and non-prejudicial.  This means first that the information on the document summarizes the information contained in the underlying documents accurately, correctly, and in a nonmisleading manner. It also means that the information on the summary is not embellished by or annotated with the conclusions of or inferences drawn by the proponent, whether in the form of labels, captions, highlighting techniques, or otherwise.  Finally, a summary document must be 'properly introduced before it may be admitted into evidence.' Id.  "In order to lay a proper foundation for a summary, the proponent should present the testimony of the witness who supervised its preparation." Id.

As an initial matter, the charts provide no information as to the source of the information provided therein. The only evidence produced by Regis regarding policies that were not renewed related to the ratings downgrade were the nine emails previously referenced. These charts identify 239 policies that were purportedly not renewed between January and November 2010 for a total of $1.1m in lost premiums. At most, Regis has produced evidence of nine non-renewals related to the ratings downgrade for a total lost premium of $43,695. In other words, there is no evidential basis for Regis's contention that the remaining 230 policy non-renewals had anything to do with AM Best or the ratings downgrade. We presume the chart contains every policy that was not renewed between January 2010 and November 2010. If that is correct, the charts have almost no probative value with regard to this lawsuit, especially since Regis has produced no evidence with respect to non-renewals in previous years.

Notwithstanding the inherent flaws of these charts, Plaintiff cannot meet four of the five criteria necessary for admissibility. First, the evidential materials that the charts portend to summarize consist of approximately 24 emails between insurance agents and Regis – only 9 of which potentially suggest a non-renewal related to the downgrade. These documents are not so voluminous that they cannot be examined in court by the trier of fact. Second, for the reasons set forth previously, the emails are hearsay and are not admissible. Where the underlying evidential materials are inadmissible, a chart summarizing those materials is also inadmissible.

Third, for the reasons mentioned, the charts are not an accurate summation of the emails or any other evidential materials. Only 9 of the 230 policies listed have any evidential support that the ratings downgrade was the reason for the non-renewal. As a result, Plaintiff's summary charts are inaccurate and misleading and therefore not admissible. Finally, Plaintiff cannot lay the proper foundation for the summary chart. The preparation of the chart was supervised by

Karen Standen, who is not on Regis's Witness List.  Moreover, even if Ms. Standen did testify about the creation of the list, she has no personal knowledge of the reasons why any policies listed in the charts were not renewed with Regis.

For these reasons, Trial Exhibits Nos. 83 and 84 are inadmissible under the Federal Rules of Evidence.

<div style="margin-left:40%">

RESPECTFULLY SUBMITTED,

BY:   LEB2615
LOUIS E. BRICKLIN, ESQUIRE
I.D. #20281
Bennett, Bricklin & Saltzburg, LLC
1601 Market Street, 16th Floor
Philadelphia, PA 19103-2393
(215) 561-4300
bricklin@bbs-law.com

MICHAEL K. FUREY, ESQUIRE
STEPHANIE R. WOLFE, ESQUIRE
Riker, Danzig, Scherer, Hyland & Perretti LLP
Headquarters Plaza, One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800
Attorneys for A.M. Best Company, Inc.

</div>

Date:  May 15, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2013, a true and correct copy of Defendant A.M. Best Company Inc.'s Motion in Limine to Exclude Regis' Proposed Trial Exhibits 83, 84, and 85 and Certification of Stephanie R. Wolfe were served via ECF on all counsel of record.


Date:  May 15, 2013                                    /s/ Louis E. Bricklin
                                                       LOUIS E. BRICKLIN
                                                       I.D. #20281


4366510v3