## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REGIS INSURANCE COMPANY, | : | |
| | : | C.A. No. 10-3171 |
| *Plaintiff,* | : | |
| vs. | : | |
| | : | **JURY TRIAL DEMANDED** |
| A.M. BEST COMPANY, INC., | : | |
| | : | |
| *Defendant.* | : | |

## ORDER

AND NOW, this                     day of                               , 2013, upon

consideration of Plaintiff's Motion for New Trial and any responsive papers, it is hereby

ORDERED that the Motion is GRANTED.  The Court's Order date May 28, 2013, entering

judgment in favor of A.M. Best and against Regis Insurance Company is Vacated.  This matter

shall be tried on                               , 2013, which is the Court's first available

listing.

**BY THE COURT:**


_____

PETRESE B. TUCKER, Ch.J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REGIS INSURANCE COMPANY,        :

                         :     C.A. No. 10-3171

        *Plaintiff,*          :

      vs.                   :

                         :    **JURY TRIAL DEMANDED**

A.M. BEST COMPANY, INC.,         :

                         :

        *Defendant.*       :

## PLAINTIFF'S MOTION FOR NEW TRIAL

Plaintiff Regis Insurance Company, Inc. ("Regis"), submits this motion for new trial pursuant to Fed. R. Civ. P. 59. Regis is entitled to a new trial because it was deprived of an opportunity to have a jury determine genuine issues of material fact regarding whether certain statements contained in defendant A.M. Best's January 12, 2010 press release regarding its downgrade of Regis were defamatory by innuendo and whether A.M. Best published these alleged defamatory statements with actual malice. Therefore, the Court erred when it granted A.M. Best's motion for judgment as a matter of law made pursuant to Fed. R. Civ. P. 50(a) at the conclusion of Regis' case in chief.

For all the reasons stated in the accompanying memorandum of law in support of plaintiff's motion for new trial, Regis believes it presented sufficient evidence in support of its claims to reach a jury on these issues. Therefore, Regis seeks an Order from the Court vacating the Judgment entered on May 28, 2013 in favor of A.M. Best and against Regis. Regis further requests that the Court enter an Order listing this matter for a new trial on the soonest available date on which the Court and all parties can be made available so as to avoid any further prejudice to Regis Insurance Company.

Respectfully submitted:
**HAINES & ASSOCIATES**


_/s/ Clifford E. Haines_
CLIFFORD E. HAINES (PA 09882)
DANIELLE M. WEISS (PA 201067)
1835 Market Street
Suite 2420
Philadelphia, PA 19103
(t) (215) 246-2200
(f) (215) 246-2211
_Attorneys for Regis Insurance Company_

Dated: June 25, 2013

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REGIS INSURANCE COMPANY, | : | C.A. No. 10-3171 |
| *Plaintiff,* | : | |
| vs. | : | |
| | : | **JURY TRIAL DEMANDED** |
| A.M. BEST COMPANY, INC., | : | |
| | : | |
| *Defendant.* | : | |

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S MOTION FOR NEW TRIAL

TABLE OF CONTENTS

TABLEOF CITATIONS ..................................................................................ii

I.      PRELIMINARY STATEMENT ..........................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND...................................3

        A.  Procedural History .................................................................3

        B.  Underlying Factual Background ...............................................4

        C.  Regis Followed the Court's Direction as Provided in Its
            March 1, 2013 Opinion and in its April 19, 2013 Order.................5

III.    ARGUMENT ........................................................................9

        A.  Legal Standard ......................................................................9

        B.  The Factual Issues that Existed Before Trial Still Existed at the
            Time of Trial and Were Presented in Regis' Case in Chief.............10

            1.  Regis presented sufficient evidence at trial to raise questions as
                To the falsity of certain statements made about it in the press release .....................11

            2.  Regis presented evidence that Best acted with actual malice ...................................16

IV.     CONCLUSION.................................................................................21

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Am. Bearing Co., Inc. v. Litton Ind., Inc.,*
    729 F.2d 943 (3d Cir. 1984).................................................................................10

*Brophy v. Phila. Newspapers, Inc.,*
    422 A.2d 625 (Pa. Super. Ct. 1980).....................................................................11

*Glenn Distribs. Corp. v. Carlisle Plastics, Inc.,*
    297 F.3d 294 (3d Cir. 2002).................................................................................10

*Harte-Hanks Communications, Inc. v. Connaughton,*
    491 U.S. 657 (1989).......................................................................................16, 20

*LePage's Inc. v. 3M,*
    324 F.3d 141 (3d Cir. 2003)...................................................................................9

*Lightening Tube, Inc. v. Witco Corp.,*
    4 F.3d 1153 (3d Cir. 1993).....................................................................................9

*Marcone v. Penthouse Int'l Magazine for Men,*
    754 F.2d 1072 (3d Cir. 1985)...............................................................................16

*McDermott Int'l, Inc. v. Wilander,*
    498 U.S. 337 (1991)...............................................................................................9

*New York Times v. Sullivan,*
    376 U.S. 254 (1964).............................................................................................16

*Price v. Trans Union, LLC,*
    839 F. Supp. 2d 785.............................................................................................10

*Rebozo v. Washington Post Co.,*
    637 F.2d 375 (5th Cir. 1981)...............................................................................20

*Sharon v. Time, Inc.,*
    599 F. Supp. 538 (S.D.N.Y. 1984) .....................................................................20

*St. Amant v. Thompson,*
    390 U.S. 727 (1968).......................................................................................16, 17

*Tucker v. Phila. Daily News,*
    848 A.2d 113 (Pa. 2004).......................................................................................11

## OTHER AUTHORITIES

Fed. R. Civ. P. 50(a) ........................................................................................................ passim

Fed. R. Civ. P. 56 .................................................................................................................10

Fed. R. Civ. P. 59 .............................................................................................................10, 21

Fed. R. Civ. P. 59(a)(1) ........................................................................................................10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REGIS INSURANCE COMPANY,                  :
                                          :        C.A. No. 10-3171
                    *Plaintiff,*          :
          vs.                             :
                                          :        **JURY TRIAL DEMANDED**
A.M. BEST COMPANY, INC.,                  :
                                          :
                    *Defendant.*          :

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S MOTION FOR NEW TRIAL

Plaintiff Regis Insurance Company, Inc. ("Regis") submits this memorandum of law in support of its Motion for New Trial pursuant to Federal Rule of Civil Procedure Rule 59. For all the reasons stated below, Regis seeks an Order from the Court vacating its May 28, 2013 Order entering judgment as a matter of law in favor of A.M. Best and against Regis and scheduling this matter for a new trial on the soonest available date.

**I.     PRELIMINARY STATEMENT**

On May 20, 2013, trial of this matter commenced. Six trial days later, on May 28, 2013, at the conclusion of Regis' case in chief, A.M. Best made an oral motion pursuant to Fed. R. Civ. P. 50(a) for judgment as a matter of law on the grounds that there was insufficient evidence of any genuine issue of material fact to be determined by the jury. The Court entertained argument from both sides. After a recess lasting less than thirty minutes, the Court returned to the bench and granted A.M. Best's motion, finding, apparently, that Regis presented insufficient evidence to permit the jury to conclude that A.M. Best had acted with actual malice. That is, the Court found that Regis did not show at trial that either A.M. Best knew that the statements contained in

its press release were false, or that A.M Best acted with reckless disregard for the truth when it published false statements about Regis in the press release.

The Court's decision that A.M. Best was entitled to judgment as a matter of law was particularly curious given the procedural history of this matter. On March 1, 2013, the Court issued an Opinion denying A.M. Best's motion for summary judgment as to Regis' claims of defamation and commercial disparagement. (Doc. 50). The Court opined that, based on the record presented at summary judgment, Regis could establish sufficient evidence that it was defamed and commercially disparaged by statements made in the Press Release A.M. Best wrote to announce its downgrade of Regis in January 2010. The Court further opined that Regis established sufficient evidence that A.M. Best published these alleged false statements with actual malice. (Docket Nos. 50).

On March 13, 2013, Best filed a motion for certification of the Court's March 1, 2013 Order for immediate interlocutory appeal. (Docket No. 53). This motion essentially sought review and/or reconsideration of the Court's March 1, 2013 Order and Opinion. On April 19, 2013, the Court entered an Order denying A.M. Best's Motion for Certification. (Docket No. 60). In its Order denying the motion for certification, the Court very clearly and succinctly stated the reasons why it believed the matter must be tried before a jury. The Court took its opportunity at each turn to state for the record that there were genuine issues of material fact that must be tried. Yet, in the final analysis, Regis was denied its right to a jury trial after offering the same evidence that was before the Court in response to A.M. Best's motion for summary judgment and motion for certification.

2

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Procedural History

Regis filed this diversity matter on June 30, 2010.  (Docket No. 1).  The Complaint contains five counts: Tortious Interference with Contractual Relations (Count I), Tortious Interference with Prospective Contractual Relations (Count II), Commercial Disparagement (Count III), Defamation (Count IV) and a prayer for declaratory relief (Count V).  (Docket No. 1).  After motion practice, only Regis' claims for defamation (Count IV) and commercial disparagement (Count III) remained at the time of trial.

After a period of discovery lasting almost two years, A.M. Best filed a motion for summary judgment on May 18, 2012. (Docket No. 46).  Regis filed a memorandum of law in opposition to the motion for summary judgment.  (Docket No. 47).  On March 1, 2013, the Court issued an Opinion and Order granting in part and denying in part Best's motion for Summary Judgment.  (Docket Nos. 50, 51).  The Court's Order permitted Regis to proceed to trial on its claims of defamation and commercial disparagement.  On March 13, 2013, Best filed a motion for certification of the Court's March 1, 2013 Order for immediate interlocutory appeal.  (Docket No. 53).  On April 19, 2013, the Court entered an Order denying Best's Motion for Certification. (Docket No. 60).  Trial of this matter began on May 20, 2013.  Regis presented its case in chief over the course of six trial days between May 20, 2013 and May 28, 2013.  On May 28, 2013, A.M. Best made an oral motion pursuant to Fed. R. Civ. P. 50(a) for judgment as a matter of law, which, after oral argument, was granted from the bench on that date.  The Court signed an Order dated May 28, 2013, which was docketed on May 29, 2013, entering judgment in favor of A.M. Best and against Regis.  (Doc. 85).

3

### B.    Underlying Factual Background[1]

Regis is a small property and casualty insurance company based in Pennsylvania. Best is a credit rating agency specializing in the rating of insurance companies. For over 25 years, Regis has been rated by Best. In summary, the complaint alleges that in January 2010, Best downgraded Regis from a rating of B+ (Good) to B- (Fair). Best issued a press release announcing the downgrade contemporaneously with the downgraded rating. (Docket No. 1).

Best contends in its Answer, among other defenses, that to date have not been tried, that its ratings publication is factually accurate because the weak financial condition of Regis' parent company, Tiber Holding Corporation. Best claimed that the weak financial condition, that was not disclosed to it until November/December 2009, would have a serious impact on Regis' ability to raise capital in the future and puts Regis at risk for being seized to satisfy Tiber's financial obligations. These two consequences, according to Best, could result in a negative impact on Regis' claims-paying ability. Best also advanced arguments before trial that its publications about Regis were protected by the First Amendment; therefore, it was entitled to judgment as a matter of law. For each of these reasons, Best believed it cannot be held responsible for the harm to Regis as a result of being downgraded by Best. (Docket No. 13).

Best's fact-based defenses, however, have not been tried. The Court granted Best's motion for judgment as a matter of law at the conclusion of Regis' case in chief. The Court rejected Best's argument that it was entitled to absolute First Amendment Protection at the

---

[1]    The facts underlying this case have been briefed on a number of occasions, but at great length in Regis' Memorandum in Opposition to the Motion for Summary Judgment (Doc. 47). That statement of facts is incorporated here by reference. The Court's version of the facts as supplied in its March 1, 2013 Opinion also provides sufficient background for purposes of this motion. (Doc. 50). Therefore, in the interest of judicial economy, a full factual recitation is not provided below.

summary judgment stage and reiterated its position in its Order denying certification for interlocutory appeal.  (Doc. 50, 60).

**C.      Regis Followed the Court's Direction As Provided in Its March 1, 2013 Opinion and in Its April 19, 2013 Order.**

When preparing for trial and in presenting its case in chief, Regis was guided by the Court's March 1, 2013 Opinion (Doc. 50) denying summary judgment on Regis' defamation and commercial disparagement claims and the Court's April 19, 2013 Order (Doc. 60) denying Best's motion for certification for interlocutory appeal.  The Court very clearly stated the genuine issues of material fact to be resolved by a jury and the evidence the Court believed supported a potential decision in favor of Regis.  Regis presented nearly identical evidence in opposition to the motion for summary judgment as it did at trial.[2]

The Court determined at the summary judgment stage that there existed two key genuine issues of material fact to be determined by a jury at trial.  First, the Court determined that Regis presented sufficient evidence from which a reasonable jury could conclude that the press release contained statements that left the reader without sufficient context to evaluate whether Best's opinions were founded on truth.  That is to say that a reasonable jury could conclude that the press release gave the reader a misimpression of Regis and the reasons why it was downgraded by Best.  (Doc. 50, p. 13).  For example, the Court determined that a jury could find that Best

---

[2]        Indeed, A.M. Best filed only one motion in limine to preclude certain evidence of damages.  (Doc. 73).  Regis opposed the motion.  (Doc. 78).  The Court granted the motion, but did not enter an order.  Although this precluded evidence was submitted in opposition to the motion for summary judgment, it has no probative value with respect to the issue raised at the motion for judgment as a matter of law pursuant to Fed. R. Civ. P 50(a): whether Regis presented sufficient evidence at trial from which the jury could conclude A.M. Best published a false statement about Regis with actual malice.  Thus, the Court's ruling prohibiting Regis from using this damages evidence at trial did not have an apparent effect on the Court's decision.  Nonetheless, Regis does not waive any argument for purposes of appeal that the refusal to admit this damages evidence was not an error.  If an appeal is necessary, Regis may pursue Third Circuit review on the basis of the Court's ruling on this motion to the extent the Court may find that Regis failed to present sufficient evidence of damages.  It is not believed the court would so find, because to do so would be clear error based on the trial record.

*knew* that the judgment against Regis' parent was not "recent." (Doc. 50). The Court reasoned that only a jury can determine whether Best framed its rating and press release in that way to create a misimpression in the marketplace that Regis is in poor financial health. The Court also opined that a reasonable jury may so find in light of the undisputed fact in this case that Regis enjoyed a very high Best Capital Adequacy Ratio ("BCAR") Score, which is an objective and quantitative analysis. The Court was particularly persuaded that A.M. Best failed to disclose in the press release that Regis operated under similar conditions (with an insolvent parent) for a decade all the while enjoying positive Best ratings. (Doc. 50). Nothing changed at Regis in 2009, but A.M. Best did not make that clear in its press release.

Second, the Court agreed with Regis at the summary judgment stage that a reasonable jury could find that Best acted with actual malice. In support of its position that Best acted with actual malice, Regis presented deposition testimony and documents tending to show that Best had several conversations with an insurance regulator, Regis' outside accountant, Regis' President and others who provided assurances and documentary support of Regis' position that it was not in any way affected by the judgments against the parent. At the summary judgment stage, the Court did not find that Best did in fact act with malice, but determined there was sufficient evidence from which a jury could reasonably conclude that it did. The same evidence of actual malice presented in opposition to the motion for summary judgment was presented during Regis' case in chief, except via live witness testimony and documents.

But, even if the Court's March 1, 2013 summary judgment Opinion was not clear enough, the Court entered another Order on April 19, 2013 reasserting this same position that Regis was entitled to a trial of the issues. Best effectively sought review of the Court's Order denying (in part) summary judgment when it filed its motion for certification for immediate

interlocutory appeal (Doc. 53).  At that juncture, the Court could have reconsidered its March 1,

2013 Order.  But it did not.  Indeed, the Court remained steadfast in its determination that Regis

was entitled to trial.  Footnote 1 to the Court's April 19, 2013 Order states, in pertinent part:

> On March 1, 2013, the Court denied A.M. Best's ("Best") motion
> for summary judgment on Plaintiff Regis Insurance Company's
> ("Regis") claims for defamation and commercial disparagement.
> Best now argues that the Court should certify this matter for
> interlocutory appeal because this case "raises serious First
> Amendment and freedom-of-speech concerns, including the risk
> that a credit rating agency will be exposed to the litigation and
> potential liability every time it issues to its sophisticated audience
> (e.g., lenders, financiers, brokers[,] and insureds.) a rating opinion
> and press release." (Doc. 52 at 1.)  The Court disagrees.  In its
> motion for summary judgment, and now in its motion to certify for
> interlocutory appeal, Best has stridently attempted to universalize
> the implications of this case by painting this case in the broadest
> strokes possible.  At every turn, Best has insisted that its actions
> were absolutely protected: first by averring that its rating was
> merely its opinion, and now by attempting to bolster its previously
> asserted (and already considered) First Amendment arguments.  At
> every turn, Best has raised the specter of the potential for litigation
> and the chilling effect on ratings issued by credit rating agencies
> that could result if the Court permits Regis' claims to proceed to
> trial.  What Best has consistently failed to appreciate, however, is
> that the facts of this case are highly unusual.  This case is unusual
> because this was not your typical ratings situation.  It is precisely
> because this was not your typical ratings situation that Best's
> arguments in favor of summary judgment and certification of an
> interlocutory appeal fail.  This Court did not find that the
> statements contained in the press release were defamatory as a
> matter of law, only that a reasonable jury could conclude that they
> were capable of defamatory meaning.  Further, despite what Best
> argues, the Court has at no point ruled that Best is not protected by
> the First Amendment.  Rather, the Court has simply ruled that
> there are genuine issues of material fact that must be resolved by a
> jury in order to determine whether or not Best is protected by the
> First Amendment *in this particular instance*.  Nothing Best argues
> in its motion for interlocutory appeal changes that determination.
>
>            ***
>
> At bottom, the viability of Regis' defamation and
> commercial disparagement claims come [sic] down to this single
> question: whether Best properly communicated to its audience the

bases for its decision to downgrade Regis. The Court found that there is a genuine issue of material fact on this question. To be clear: the problem with the press release is that it arguably implies Regis experienced certain financial difficulties in 2009, when, in fact, it had not. The only thing that had changed in 2009 was that Best learned of information about the financial health of Regis' parent company of which it was previously unaware. As detailed in the Opinion, see Doc. 50 at 13-16, a reasonable jury could find that Best recklessly framed its rating and press release in such a way as to create the false impression that Regis experienced certain financial difficulties in 2009.

Further, in keeping with the communicative intent element required for establishing actual malice in a defamation-by-implication case, a reasonable jury could find that Best intentionally or recklessly worded its press release in this way because it was in the best interests of its company to do so. Id. at 14-15 ("There is a marked and appreciable difference between implying that Regis' parent company is experiencing recent financial difficulties and clearly stating that Regis has been operating for almost ten years *despite* its parent company's financial difficulties (and that Best is only now learning of it.")

(Doc. 60). There is no question that this footnote laid out a clear and succinct statement of the factual issues raised by the record in this case to be determined by a jury, as well as the legal standard to be met in proving it. Regis followed the Court's instruction to the letter. Yet, on much the same record as that which was before the Court on summary judgment, the Court concluded after Regis rested its case in chief that A.M. Best was entitled to judgment as a matter of law.

The case was thus never submitted to a jury for determination of the genuine issues of material fact that the Court agreed had been raised by the record at the summary judgment phase, and which position the Court reiterated in its April 19, 2013 Order. (Doc. 50, 60). A.M. Best's third bite at the same apple was somehow successful on May 28, 2013. The Court's ruling on May 28, 2013 cannot be permitted to stand under these circumstances.

### III.    ARGUMENT

Regis presented sufficient evidence at trial to support its claims that the statements made in the press release were defamatory by implication. Regis also presented sufficient evidence that A.M. Best published those defamatory statements with actual malice. Therefore, A.M. Best's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) should have been denied. The Court erroneously substituted its own judgment for that of the jury. Therefore, Regis is entitled to a new trial so that a jury can decide the genuine issues of material fact raised by the evidence.

#### A.    Legal Standard

A motion for judgment as a matter of law made pursuant to Fed. R. Civ. P. 50(a) should be granted only where the facts and the law "will reasonably support only one conclusion." *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 356 (1991). A court should only grant such a motion only "if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *LePage's Inc. v. 3M,* 324 F.3d 141, 145-46 (3d Cir. 2003) (quoting *Lightening Tube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1166 (3d Cir. 1993)). In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. *Id.* (citing *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 190 (3d Cir. 1992). The question is not whether there is literally no evidence supporting the party against whom judgment is to be granted as a matter of law, but whether there is evidence upon which the jury could properly find a verdict for the nonmoving party. *Lightening Tube, Inc.,* 4 F.3d at 1166 (citations omitted).

Notably, this standard "mirrors" the standard for a motion for summary judgment pursuant to Fed. R. Civ. P. 56. *Price v. Trans Union, LLC,* 839 F. Supp. 2d 785, 792 (citing *Glenn Distribs. Corp. v. Carlisle Plastics, Inc.,* 297 F.3d 294, 299 (3d Cir. 2002)).

Under Fed. R. Civ. P. 59, the Court may grant a new trial on some or all of the issues after a trial, for any reason for which a new trial has "heretofore been granted in an action at law in federal court…" Fed. R. Civ. P. 59(a)(1).  It is within the Court's discretion to order a new trial.  The Court may grant a new trial if required to prevent injustice. *Am. Bearing Co., Inc. v. Litton Ind., Inc.,* 729 F.2d 943, 948 (3d Cir. 1984).

**B.     The Factual Issues that Existed Before Trial Still Existed At the Time of Trial and Were Presented In Regis' Case In Chief.**

The Court's separate, but wholly consistent rulings denying summary judgment and denying certification of interlocutory appeal clearly stated that there were genuine issues of material fact that must be decided by a jury.  First, a jury was required to decide whether Press Release defamed Regis as a matter of fact.[3]  The Court also determined that a reasonable jury could find based on the record developed in discovery that Best abused a conditional privilege to publish these statements.  The Court ruled specifically that Regis could prove this by expert testimony that A.M. Best departed from its stated methodologies to determine the rating it ultimately published about Regis.

If there was sufficient evidence to overcome summary judgment on the defamation claims, then that same evidence, when presented at trial should also have been sufficient to reach

---

[3]        For purposes of this motion, the word "defamation" and its derivatives are used interchangeably with commercial disparagement.  Though the claims are legally distinct, the standard of proof for each is substantially similar.  Indeed, the Court found on summary judgment that for all the reasons Regis defeated the motion for summary judgment as to its defamation claim, its commercial disparagement claim also survived that motion. (Doc. 50).

a jury. *Glenn Distribs. Corp.,* 297 F.3d at 299. A.M. Best's motion for judgment as a matter of law should not have been granted at the conclusion of Regis' case in chief.

> **1.      Regis presented sufficient evidence at trial to raise questions as to the falsity of certain statements made about it in the press release.**

Under well-settled principles of Pennsylvania law, it is for the Court to determine as a matter of law in a defamation case whether a statement is capable of defamatory meaning. *Tucker v. Phila. Daily News,* 848 A.2d 113, 123 (Pa. 2004). So long as a statement is capable of defamatory meaning, it is for the jury to decide whether the statement is in fact defamatory. *Brophy v. Phila. Newspapers, Inc.,* 422 A.2d 625, 628 (Pa. Super. Ct. 1980).

Here, the Court appropriately determined in its Order denying Best's Motion for Summary Judgment, that the four statements Regis identified as defamatory are capable of a defamatory meaning because, even if they are opinions, they imply undisclosed defamatory facts about Regis. (Doc. 50 at p. 13). The Court appropriately noted that Pennsylvania law is clear that whether a statement is in fact defamatory is necessarily a jury question.

The Court reiterated this position in its footnote 1, to its Order denying Best's motion for certification for immediate interlocutory appeal, stating that there was a genuine issue of material fact to be determined by the jury as to whether "whether Best properly communicated to its audience the bases for its decision to downgrade Regis." (Doc. 60, Order Denying Certification, fn.1).

At trial, Regis presented evidence of the falsity of each statement that the Court had previously determined was capable of a defamatory meaning. Regis' case in chief was dedicated to parsing out the language of the press release and demonstrating that what was said in that summary of Best's rating decision was defamatory by implication. Regis also presented evidence

11

that the press release was purposefully crafted to give the reader a misimpression that something had happened at the parent company level <u>in 2009</u> that would have a negative impact on Regis.

To that end, Regis called a number of witnesses to testify on its behalf at trial. Regis' comptroller Sharon Rinaldo, testified that she came to work at Regis in 2006. According to her testimony, Ms. Rinaldo knew from the first day of her employment that there were judgments against Regis' parent company, but was told that the judgments would not impact Regis and she was not to regard the judgments or their consequences. From 2006-November 2009, Ms. Rinaldo performed her duties at Regis, watching the surplus grow and the company thrive without any negative impact from the judgments. Indeed, after that first day of work, Ms. Rinaldo did not need any, nor did she seek further information about the judgments until after the 2009 ratings meeting at which she was asked to produce a financial statement for the parent. The parents' consolidated financial statement was promptly provided to Best, which caused the series of events giving rise to the trial. From Ms. Rinaldo's testimony, a reasonable juror could conclude that from at least 2006-2009, Regis was running without any negative impact from the judgments against its parent company. The jury could also reasonably conclude from this testimony that the judgments were not "recent" as of 2009.

Regis also presented the testimony of Stephen Johnson, Deputy Commissioner, Pennsylvania Insurance Department (the "Department"). Among other things, Mr. Johnson's testimony established that Regis, like all insurance companies, is regulated by the government of the state in which it's domiciled. The Department, the regulating authority overseeing Regis, was well aware of the judgments against Regis' parent. Johnson also established that the Department knew of the judgments since at or about the time the judgments were entered, and that Regis continued to do business within Pennsylvania and in other places with no greater level

of governmental supervision or intervention than was required before the judgments were entered against the parent. Johnson confirmed that Regis was considered to be a healthy Pennsylvania insurance company at the time it was downgraded by Best in January 2010--the judgments had no impact on Regis' financial health or claims-paying ability. Mr. Johnson also established the important fact that the judgment holder made no effort to seize Regis to satisfy the parent company's debt in 2009, or ever. Indeed, Johnson testified, the Department would necessarily be made aware of any such efforts, because the Department oversees all money coming out of an insurance company and also must approve the sale or liquidation of any insurance company.

Mr. Johnson's testimony further explained that Regis could not be sold piecemeal to satisfy its parent's debts in the sense that Regis could not be stripped of its assets. In essence, if Regis were sold, it would be sold as an insurance company, to a buyer who wanted to run it as an insurance company and who would continue to operate Regis for the benefits of its policyholders. Pennsylvania law protects policyholders such that insurance companies cannot be stripped of their assets to the detriment of the policyholders. That means that while dividends can be paid to a parent company, or an owner, those dividends cannot exceed a certain (small) percentage of the insurance company's surplus. That guarantees that there will be sufficient funds left in the insurance company to pay any claims.

Mr. Johnson also confirmed that he had conversations with employees of A.M. Best in early January 2010, which detailed the Department's position with respect to the impact of these judgments on Regis and that notes of the conversations as made by A.M. Best's employees were consistent with his recollection of what was discussed in the conversations.

From Mr. Johnson's testimony, a reasonable jury could have concluded that from a regulatory standpoint, the judgments had no impact on Regis' financial strength in the real world. The jury could have also reasonably concluded that Regis' policyholders would not be harmed by any potential sale of Regis; that a sale of Regis would have no impact on its claims-paying ability; and that the judgments posed no threat to Regis' financial strength or to any of its policyholders. As will be described more fully below, Mr. Johnson's testimony also provides ample evidence from which the jury could reasonably have concluded that A.M. Best acted with actual malice when it published false statements about Regis in the Press Release.

Regis' outside accountant, Mr. Helstrom, provided testimony from which the jury could have concluded Regis was defamed. Mr. Helstrom testified about Regis' financial condition in 2009 and early 2010. His testimony confirmed that Regis' surplus was trending upward during that time period and that the judgments against the parent company had no impact on Regis' financial health. More importantly, Mr. Helstrom testified about Regis' historical financial health from the 1990s through 2010. Mr. Helstrom testified that Regis has always operated its finances independent of its parent. Further, in the approximately 20 years in which Mr. Helstrom served as Regis' outside accountant, he was not aware of a single instance on which Regis needed to obtain an infusion of capital from any source. Indeed, at all times between at least 1993 through January 2010, Regis was more than adequately capitalized. Mr. Helstrom testified that Regis did not experience financial problems of any kind until after it was downgraded in January 2010.

Mr. Helstrom also provided a detailed description of his conversations with A.M. Best's employees and the reasonable assurances he gave to them in the course of those conversations that the judgments against the parent company would not and did not have any impact on Regis

financial performance in the nearly 10 years since the judgments had been entered. Indeed, the evidence adduced at trial confirmed that Regis grew its surplus by over $2 million between the date the judgments were entered against the parent and January 2010, when Regis was downgraded. In January 2010, Regis' surplus was at an all-time high.

A reasonable jury could have found from this evidence that the judgments against Regis' parent had no impact on Regis' claims-paying ability, or capitalization. The jury also could have reasonably concluded that A.M. Best's fear that the judgments against Regis' parent would be a limitation on Regis' ability to raise capital was irrational. The testimony from Mr. Helstrom (and Ms. Rinaldo) established that when Regis was downgraded in January 2010, it had surplus capital in excess of $8 million. This meant that net of all possible policyholder claims and other liabilities, Regis had more than $8 million in excess cash on hand. This is not a picture of a struggling or weak company.

Regis also called two A.M. Best employees to testify in its case in chief. These employees confirmed, among other things, that using A.M. Best's objective measure of capitalization, Regis was considered very well capitalized. This evidence, too, when viewed in the light most favorable to Regis, tends to prove that the press release's attempt to make Regis look somehow weakened in 2009 was defamatory. This evidence also tends to show that Best knew in January 2010 that, from a strictly objective financial standpoint, Regis was not weakened in any way by the judgments against its parent. The Best employees confirmed that they were aware in 2009 that the judgments were not "recent."

At the conclusion of the Regis' case in chief, with respect to the first genuine issue of material fact, which whether the statements published about Regis were defamatory, there was

sufficient evidence[4] presented from which the jury could have concluded that the press release was defamatory by implication.  Regis was entitled to have a jury decide this issue.

**2.      Regis presented evidence that Best acted with actual malice.**

The Court concluded in advance of trial that there was a genuine issue of material fact as to whether A.M. Best published the alleged defamatory statements with actual malice.  Indeed, in footnote 1 to the Order denying certification for interlocutory appeal, the Court succinctly stated that, "a reasonable jury could find that Best recklessly framed its rating and press release in such a way as to create the false impression that Regis experienced certain financial difficulties in 2009." (Doc. 60).  In the context of a defamation claim, actual malice means knowledge that a published statement is false or that the speaker acted with reckless disregard for the truth or falsity of the statement it published.  *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964); see also *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1089 (3d Cir. 1985).  Reckless conduct "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  Rather, to demonstrate reckless disregard for the truth or falsity of a defamatory statement, the plaintiff must show "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of its publication." *Id.*  This is a subjective inquiry that may be based on circumstantial evidence that demonstrates sufficient evidence to show that the defendant had a high degree of awareness of probable falsity. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989)(citations omitted).

---

[4]      In the absence of the trial transcript, it is impossible to detail every fact from which the jury could reasonably have concluded that the press release defamed Regis by implication.  Nonetheless, the motion for judgment as a matter of law should not have been granted if there was any evidence at all on which the jury could have found for Regis.  Therefore, it is not necessary to detail every reason.  These examples should be sufficient to demonstrate the Court's error.

It is rare in a defamation case to find direct evidence of a defendant's "serious doubts" as to the truth of a published defamatory statement. *St. Amant v. Thompson,* 390 U.S. at 732. Although failure to fully investigate alone is insufficient to carry this burden, a failure to pursue the most obvious available sources for corroboration of the truth of a published statement may be sufficient. *Id.*

The Court spent over two pages of its Opinion denying summary judgment analyzing the evidence of actual malice, concluding, "[a] reasonable jury could find it was *reckless* for Best to arrive at such a substantial downgrade." Docket No. 50, p. 19 (emphasis supplied). The Court reiterated its position in its footnote 1 to the Order denying certification for interlocutory appeal. (Doc. 60). The footnote makes clear that in the Third Circuit, the touchstone for establishing actual malice is recklessness. But, even when asked to revisit whether Regis had provided sufficient evidence in opposition to the summary judgment motion to warrant submission of the question to a jury, the Court unequivocally confirmed that the record evidence was sufficient for the question to reach a jury.

Yet, when the Court granted A.M. Best's Rule 50(a) motion, it determined that Regis failed to present sufficient evidence of Best's recklessness to send the case to the jury. In other words, the Court determined that there was insufficient evidence from which a reasonable jury could conclude that Best acted with reckless disregard for the falsity of the statements it published about Regis. This ruling is wholly inconsistent with the Court's prior rulings on the issue and is also inconsistent with the evidence actually presented at trial.

Even assuming that Best was entitled to disbelieve everything it had been told by Stephen Johnson and Earl Helstrom at the time the ratings evaluation was made, Best cannot escape two critical pieces of evidence submitted for the jury's consideration in Regis' case in chief: (i) Regis

had experienced steady growth of its surplus in the 5 year period before the downgrade, and the

judgments existed against the parent company in each of these years; and (ii) Best's own draft

press release, entered at trial as Exhibit 41, establishes that Best's analysts wanted to convey the

whole truth in the press release, but were instructed to remove certain language from it that

would have clarified the factual predicate.  A true and correct copy of Exhibit 41 is attached as

Exhibit A.  Exhibit 41 contains instructions to delete language that would have informed the

reader of the press release that the judgments were "recent" only in the sense that Best had only

just become aware of them, but that Regis continued to operate at a high level and maintain

strong capitalization despite these judgments.  This document alone presents clear and

convincing evidence from which the jury could have concluded that Best was aware that it's

press release was not accurately presenting the situation to the reader.  This document

demonstrates that A.M. Best made a conscious decision to withhold key information from the

press release's audience that could have provided proper context, instead choosing to publish a

misimpression.

     At a minimum, the trial testimony established that A.M. Best knew that it had been

almost ten years since the judgments had been entered against Regis' parent. A.M. Best knew

that Regis' financial strength was not weakened by the judgments against the parent and that it

had objectively grown its surplus to its highest point in over a decade despite the judgments

against the parent.  Best knew that Regis had not been seized to pay off the parent company's

debts, nor had the judgment holder made any effort to seize Regis for that, or any purpose.  A.M.

Best was also aware that Regis had not attempted to raise capital, and that at least since the early

1990s, it had no need to do so.   Best unequivocally knew that Regis had enjoyed positive Best

ratings in each of the previous years in which the parent had been encumbered.  Best was aware

from Mr. Johnson that the Department did not consider these judgments to be an impediment to Regis' financial health or claim-paying ability. Best also knew that any attempt to seize Regis would be supervised and approved by the Department and that the policyholders would be protected. Most importantly, the passage of time between the entry of the judgments and Regis' ongoing success despite the judgments is proof in itself that Best's fears were simply irrational. Unlike a company suddenly saddled by debt at the parent level, which might have some negative impact, Regis has almost a decade of history to prove that none of these fears have, or will, come to pass.

Thus, A.M. Best's choice to omit or delete important details from the press release is evidence of actual malice and evidence of an effort to maximize the harm to Regis from the defamatory publication. From Exhibit 41, and the other evidence described above, the jury could have reasonably concluded that by leaving out these details, A.M. Best intentionally created ambiguity and implied facts about Regis that were false and defamatory. Therefore, there was sufficient evidence presented at trial from which the jury could have concluded that it was reckless for Best to have removed details from the draft press release.[5] This issue should have been given to the jury to decide.

But, even if the Court is not satisfied that Exhibit 41 is in itself sufficient evidence of actual malice, Regis' ratings methodology expert, Michael Cohen, gave an opinion that Best acted with reckless disregard for the truth of its published statements about Regis by failing to gather all the necessary information to confirm its position. Cohen opined that Best should have

---

[5]      The Court made an explicit finding from the bench in connection with Best's Rule 50 motion that the rating statement itself was not actionable. Regis understood that to be so from the Court's ruling on the motion for summary judgment. Indeed, Regis believed from the outset of trial that the only actionable statements were those contained in the Press Release and not those contained in the rating statement, or as referred to at trial, those published "in the Green Book."

19

contacted the judgment holder to determine whether it planned to take any action with respect to Regis in order to satisfy the debts of the parent company. Put another way, the failure to gather the information required to underlie the decision as reported in the press release was reckless. The jury could easily have been swayed by this opinion and, therefore, reached a conclusion that Best's failure to acquire all of the relevant information to support its downgrade of Regis was reckless.

Indeed, other courts have found that it if a report is created in the absence of any fact finding at all, that is not reckless, but doing a partial investigation while purposefully avoiding the key question may constitute reckless conduct. *Harte-Hanks,* 491 U.S. at 693; *see also, Rebozo v. Washington Post Co.,* 637 F.2d 375, 382 (5th Cir. 1981); *Sharon v. Time, Inc.,* 599 F. Supp. 538, 584-85 (S.D.N.Y. 1984). Even assuming that Regis cannot attack the ratings analysis itself, the same evidence could be used to prove recklessness with respect to the reporting of the ratings analysis as set forth in the press release.

These same arguments were raised at the summary judgment stage. On March 1, 2013, the Court agreed with Regis that it was entitled to a jury determination of the issue of whether the statements at issue were in fact defamatory and whether A.M. Best published the statements with actual malice. The Court renewed its commitment to that position on April 19, 2013 in the Order denying Best's motion for certification. Then, curiously, after six days of trial, when Regis rested its case in chief, the Court suddenly reversed its course and decided that the same evidence was insufficient to reach a jury on these issues.

As this memorandum demonstrates, when the evidence is taken in the light most favorable to Regis, it is clear that the jury could reasonably have found in favor of Regis as to each one of these critical factual issues. Therefore, the Court should not have granted Best's

Rule 50 motion. Regis must be afforded a new trial pursuant to Rule 59 to avoid this injustice and prevent further prejudice.

## IV.   CONCLUSION

For all the reasons stated in this memorandum, the Court should vacate the Order of May 28, 2013 entering judgment in favor of A.M. Best and against Regis. The Court should also issue an Order granting Regis a new trial on the earliest possible date to avoid further prejudice to Regis.

Respectfully submitted:
**HAINES & ASSOCIATES**

_/s/ Clifford E. Haines_
CLIFFORD E. HAINES (PA 09882)
DANIELLE M. WEISS (PA 201067)
1835 Market Street
Suite 2420
Philadelphia, PA 19103
(t) (215) 246-2200
(f) (215) 246-2211
_Attorneys for Regis Insurance Company_

Dated: June 25, 2013

21

# EXHIBIT A

# EXHIBIT 41



Marc Liebowitz/US/AMBEST
07/29/2010 12:23 PM

To  RatingEmailsPC@AMBEST
cc
Subject  AMB=2676 Best Senior Management
Press Release Review

Regards

Marc Liebowitz
P/C Rating Division
A.M. Best Company
Oldwick, NJ 08858

Phone (908) 439 2200 Ext. 5071
Fax (908) 439 2433
----- Forwarded by Marc Liebowitz/US/AMBEST on 07/29/2010 12:23 PM -----

| | |
|---|---|
| From: | Gerard Altonji/US/AMBEST |
| To: | marc.liebowitz@ambest.com |
| Cc: | Andrew.Colannino@ambest.com, Anthony Diodato/US/AMBEST@AMBEST |
| Date: | 12/16/2009 04:48 PM |
| Subject: | Fw: Draft Press Release_December 16_ 2009.doc |

See Matt's edits, accept all of them, and send to AMB Corp Communications with a request that we
have it back tomorrow morning.  And use it as a basis for the rationale.   We'll call Richard in the
morning.

*Gerard*

**Gerard J. Altonji**
Assistant Vice President – Property / Casualty
Ambest Road, Oldwick, NJ, 08858, USA
**Tel: +1 (908) 439-2200 ext. 5626 | Fax: +1 (908) 439-2913**
E-mail: **Gerard.Altonji@ambest.com**

**BlackBerry: 908-328-1407**

----- Forwarded by Gerard Altonji/US/AMBEST on 12/16/2009 04:48 PM -----

| | |
|---|---|
| From: | Matthew Mosher/US/AMBEST |
| To: | Gerard Altonji/US/AMBEST@AMBEST |
| Cc: | Andrew F Colannino/US/AMBEST@AMBEST, Anthony Diodato/US/AMBEST |
| Date: | 12/16/2009 04:40 PM |
| Subject: | Draft Press Release_December 16_ 2009.doc |

# EXHIBIT 41

AMB00300



Draft Press Release_December 16_ 2009.doc

AMB00301



# NEWS RELEASE

A.M. BEST COMPANY, INC., OLDWICK, NJ • A.M. BEST EUROPE, LTD., LONDON
A.M. BEST ASIA-PACIFIC, LTD., HONG KONG

**DRAFT CONTACTS:**

| Analysts | Public Relations |
|---|---|
| Marc Liebowitz | Jim Peavy |
| (908) 439-2200, ext. 5071 | (908) 439-2200, ext. 5644 |
| marc.liebowitz@ambest.com | james.peavy@ambest.com |
| | |
| Gerard Altonji | Rachelle Morrow |
| (908) 439-2200, ext. 5626 | (908) 439-2200, ext. 5378 |
| Gerard.altonji@ambest.com | rachelle.morrow@ambest.com |

### A.M. Best Downgrades Ratings of Regis Insurance Company

OLDWICK, N.J., December XX, 2009—A.M. Best Co. has downgraded the financial strength rating to C+ (Marginal) from B+ (Good) and issuer credit rating to "b-" from "bbb-" of Regis Insurance Company (Regis) (Wayne, PA). The outlooks for these ratings have been revised to negative from stable.

These rating actions reflect recent disclosures of the lack of financial flexibility at Regis's privately held parent, Tiber Holding Corporation (Tiber) (Wilmington, DE), due to that organization's high consolidated financial leverage, lack of access to additional capital, and other operating issues. The rating action also considers Regis's continued poor operating performance.

In regard to Regis, the company's historically weak operating results largely reflect the lack of premium scale, thus driving ongoing underwriting losses through high expense ratios. Somewhat offsetting these negative rating factors are Regis's conservative underwriting leverage and niche market expertise in the small to mid-size commercial segment. While underwriting results have largely been negative, total return measures have generally been positive over a ten year period with consideration of capital gains. Positive rating factors also include management's strong underwriting culture and insistence upon proper pricing, reserving and terms and conditions. The rating outlook reflects A.M. Best's concerns that the challenges at the parent company may negatively impact the operations of Regis.

**Deleted:** he

**Deleted:** parent's

**Deleted:** The recently received (by A.M. Best) audited financial statements of Tiber indicate potentially significant exposure to Regis should certain of Tiber's litigation-related liabilities be enforced. It should be noted that Tiber's litigation-related liabilities are not related to Regis, which is under the regulatory jurisdiction of the Pennsylvania Department of Insurance.

**Deleted:**

**Deleted:** strong stand-alone capitalization,

**Deleted:**

AMB00302



**NEWS RELEASE**

A.M. BEST COMPANY, INC., OLDWICK, NJ • A.M. BEST EUROPE, LTD., LONDON
A.M. BEST ASIA-PACIFIC, LTD., HONG KONG

For Best's Credit Ratings, an overview of the rating process and rating methodologies, please visit www.ambest.com/ratings.

The principal methodologies used in determining these ratings, including any additional methodologies and factors that may have been considered, can be found at www.ambest.com/ratings/methodology.

Founded in 1899, A.M. Best Company is a global full-service credit rating organization dedicated to serving the financial and health care service industries, including insurance companies, banks, hospitals and health care system providers. For more information, visit www.ambest.com.

####

AMB00303

## CERTIFICATE OF SERVICE

I, Clifford E. Haines, Esquire hereby certify that I have caused *Plaintiff's Motion for New Trial* to be filed electronically on this day.  It is available for reviewing and downloading from the ECF System, and will be served electronically on all counsel.

Louis E. Bricklin, Esquire
Bennett Bricklin & Saltzburg, LLC
1601 Market Street
16th Floor
Philadelphia, Pennsylvania 19103-2393

Michael K. Furey, Esquire
Riker Danzig
One Speedwell Avenue
Morristown, New Jersey 07962

/s/ Clifford E. Haines
CLIFFORD E. HAINES (PA 90882)
Email: chaines@haines-law.com
Haines & Associates
1835 Market Street - Suite 2420
Philadelphia, PA 19103
Telephone:  215-246-2200
Fax:    215-246-2211
*Attorney for Plaintiff*

Date:   June 25, 2013