**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

REGIS INSURANCE COMPANY             :
                                    :
vs.                                 :            No. 10-3171
                                    :
A.M. BEST COMPANY, INC.             :
_____:

**DEFENDANT A.M. BEST COMPANY, INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO REGIS INSURANCE COMPANY'S MOTION FOR A NEW TRIAL**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ............................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND.......................................3

III.  STANDARD OF REVIEW ...........................................................................4

IV.  DISCUSSION .................................................................................................6

    A.  The Court Did Not Err In Granting A.M. Best's Motion For Judgment At The Close Of Plaintiff's Evidence. ..................................................................6

    B.  Plaintiff Utterly Failed To Prove That Any Statement Published By A.M. Best Concerning It Was Defamatory or False. ..............................................8

        1.  A.M. Best's 2010 Rating Of Regis Is An Opinion Entitled To First Amendment Protection. ..............................................................8

        2.  Regis Failed To Prove That A.M. Best's Statements Published In The January 12, 2010 Press Release Are Defamatory Or False. ......................9

    C.  Regis Failed To Provide Sufficient Evidence Of Actual Malice And, As A Result, A.M. Best Was Entitled To Judgment As A Matter Of Law. ..........13

        1.  The Rating...........................................................................................14

        2.  The Press Release ...............................................................................17

V.  CONCLUSION...............................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Abel v. Dubberly,
  210 F.3d 1334 (11th Cir. 2000) ...........................................................6

Aviation Charter, Inc. v. Aviation Research Group,
  416 F.3d 864 (8th Cir. 2005) ...............................................................10

Brown v. Old Castle Precast. East, Inc.,
  No. 00–2549, 2003 WL 22999302 (E.D. Pa. Jan.14, 2003) .......................4

Browne v. Avvo, Inc.,
  525 F. Supp. 2d 1249 (W.D. Wa. 2007) .................................................10

Compuware Corp. v. Moody's Investors Services, Inc.,
  499 F.3d 520 (6th Cir. 2007) ....................................................9, 17, 18

Foster v. Nat'l Fuel Gas Co.,
  316 F.3d 424 (3d Cir. 2003)...................................................................5

Gagliardo v. Connaught Labs.,
  311 F.3d 565 (3d Cir. 2002)..................................................................5

Gertz v. Robert Welch, Inc.,
  418 U.S. 323 (1974).............................................................................9

Harte-Hanks Communications, Inc. v. Connaughton,
  491 U.S. 657 (1989)...........................................................................14

Haynes v. Alfred A. Knopf, Inc.,
  8 F.3d 1222 (7th Cir. 1993) ................................................................12

Jefferson Co. Sch. Dist. v. Moody's Investors Servs., Inc.,
  175 F.3d 848 (10th Cir. 1999) ..............................................................9

Kendall v. Daily News Publishing Co.,
  716 F. 3d 82 (3d Cir. 2013)...........................................................12, 18

Kimble v. Morgan Props.,
  No. 02–9359, 2005 WL 2847266 (E.D. Pa. Oct. 25, 2005).......................4

Kiss v. Kmart Corp.,
    No. 97–7090, 2001 WL 568974 (E.D. Pa. May 22, 2001) ...................................... 5

Kronenberg v. Baker & McKenzie, LLP,
    692 F. Supp.2d 994 (N.D. Ill. 2010) ................................................................... 10

Lawler v. Richardson,
    No. 10-196, 2012 WL 2362383 (E.D. Pa. June 20, 2012) ...................................... 6

Lee v. Glessing,
    51 Fed. Appx. 31 (2d Cir. Nov. 6, 2002) ............................................................... 7

Marcone v. Penthouse Int'l Magazine for Men,
    754 F.2d 1072 (3d Cir.1985) .............................................................................. 14

Masson v. New Yorker Magazine, Inc.,
    501 U.S. 496 (1991) ......................................................................................... 11

Montgomery Ward & Co. v. Duncan,
    311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940) .................................................. 4

Patzig v. O'Neil,
    577 F.2d 841 (3d Cir. 1978) ................................................................................ 5

Philadelphia Newspapers, Inc. v. Hepps,
    475 U.S. 767 (1986) ................................................................................ 8, 12, 13

Reeves v. City of Jackson,
    532 F.2d 491 (5th Cir. 1976) ............................................................................... 7

Reeves v. Sanderson Plumbing Prods., Inc.,
    530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) .......................................... 5

Runyon v. Applied Extrusion Technologies, Inc.,
    619 F.3d 735 (7th Cir. 2010) ............................................................................... 6

Sagendorf-Teal v. County of Rensselaer,
    100 F.3d 270 (2d Cir. 1996) ................................................................................ 6

Sandoval v. U.S. Smelting, Refining & Mining Co.,
    544 F.2d 463 (10th Cir. 1976) ............................................................................. 7

Seaton v. TripAdvisor, LLC,
    No. 3:11-cv-549, 2012 WL 3637394 (E.D. Tenn. Aug. 22, 2012) .......................... 10

St. Amant v. Thompson,
    390 U.S. 727 (1968) ........................................................................................ 14

St. Louis Convention & Visitors Comm'n v. National Football League,
  154 F.3d 851 (8th Cir. 1998) ..................................................................................6

Thomas Merton Center v. Rockwell Int'l Corp.,
  497 Pa. 460, 442 A.2d 213 (1981) ........................................................................11

Tucker v. Fishbein,
  237 F.3d 275 (3d Cir. 2001) .................................................................................14

ZL Technologies, Inc. v. Gartner, Inc.,
  No. CV 09-02393JF, 2009 WL 3706821 (N.D. Cal. Nov. 4, 2009), aff'd 433 Fed.
  Appx. 547 (9th Cir. May 13, 2011), cert. denied 132 S.Ct. 455 (U.S. 2011) .........................10

ZL Techs., Inc. v. Gartner, Inc.,
  709 F. Supp. 2d 789 (N.D. Cal. 2010) ....................................................................10

## STATUTES

42 Pa.C.S. § 8343 ............................................................................................20

## RULES

Fed. R. Civ. P. 50 ............................................................................................. passim

Fed. R.Civ. P. 54 ...............................................................................................7

Fed. R. Civ. P. 59 ............................................................................................1, 4

L. Civ. R. 7.1 ...............................................................................................4, 6

## OTHER AUTHORITIES

Restatement (Second) of Torts § 581A ....................................................................12

Wright, Miller et al., 18B Fed. Prac. & Proc. Juris. § 4478.1 (2d ed.) ...........................7

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

REGIS INSURANCE COMPANY      :
     :
vs.      :      No. 10-3171
     :
A.M. BEST COMPANY, INC.      :
_____ :

**DEFENDANT A.M. BEST COMPANY, INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO REGIS INSURANCE COMPANY'S MOTION FOR A NEW TRIAL**

Defendant A.M. Best Company, Inc. ("A.M. Best") submits this memorandum of law in

opposition to the motion for a new trial filed by plaintiff Regis Insurance Company ("Regis")

pursuant to Rule 59 of the Federal Rules of Civil Procedure.

**I.    PRELIMINARY STATEMENT**

A.M. Best, a credit rating agency, downgraded its Financial Strength Rating ("FSR") of

Regis from B+ to B- in January 2010 after learning for the first time in late 2009 that Regis'

holding company, Tiber Holding Corporation ("Tiber") was hopelessly insolvent and without

any source of revenue other than for Regis' earnings and after determining that Regis' already

weak operating performance had continued to decline.  Regis then sued A.M. Best, and, after the

Court denied A.M. Best's motion for summary judgment on Regis' defamation and commercial

disparagement claims, the matter proceeded to trial beginning on May 20, 2013.  After six days

of presenting its case in chief to the jury, Regis had had ample opportunity to present evidence of

its claims for defamation and commercial disparagement.  It failed to do so, and the Court

granted A.M. Best's motion for a directed verdict.

Regis' theory is that (a) A.M. Best erred in downgrading Regis to a B- as a result of

considering the financial condition of and Judgments against Tiber and (b) the omission of

1

additional information about the Tiber-related litigation and Regis' stand-alone capitalization from the Press Release harmed Regis' reputation. However, it became clear during trial that A.M. Best's downgrade of Regis' FSR in 2010 was a methodically developed and honestly held opinion, and that the circumstances surrounding the downgrade and the challenged Press Release statements presented no evidence of recklessness or actual malice. Significantly, Regis does not challenge the dismissal of its claim that the downgrade of its rating was defamatory. We will address the subject in this Brief, however, because if the rating downgrade is not actionable, then Regis' claims relating to the Press Release announcing the new rating are seriously undermined.

Regis now argues, in effect, that because the Court denied A.M. Best's motion for summary judgment on Regis' defamation and commercial disparagement claims, it did not have the discretion to grant A.M. Best's Rule 50(a) motion at the close of plaintiff's case. However, it cites no law to that effect because there is none. To the contrary, many federal courts have recognized the authority of a District Court to grant a party's Rule 50 motion after denying that party's motion for summary judgment. Moreover, the Court's review at the summary judgment stage was limited to the briefs and exhibits submitted by the parties. With the benefit of reading the parties' pre-trial submissions, hearing the trial testimony and cross-examination of Regis' witnesses, and seeing the exhibits used by the parties at trial, the Court was free to conclude that A.M. Best's rating was an opinion and that Regis had presented insufficient evidence of actual malice in connection with the publication of both the rating and the Press Release. In addition, Regis presented no evidence that anyone was misled by any statement in the Press Release. In fact, Regis presented no evidence that anyone had read the Press Release. Accordingly, the Court should deny Regis' motion for a new trial.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Because the evidence and testimony presented at trial have confirmed the accuracy of its previous description of the facts, A.M. Best incorporates by reference the statements of facts set out in its Memorandum of Law in Support of its Motion for Summary Judgment (Doc. 46-2) at pages 2 through 16 and its Pre-Trial Memorandum (Doc. 65) at pages 1 through 16. Accordingly, this memorandum of law will refer only to the more important aspects of the evidence and testimony presented at trial which demonstrates Regis' failure to present sufficient evidence upon which the jury could properly render a verdict in its favor.

In ruling on A.M. Best's Rule 50(a) motion, the Court recognized this deficiency of evidence:

> In considering the Rule 50 Motion, the Court is of the opinion that there is some issue as to whether or not there is sufficient evidence and I have to take the rating separate from the press release.
>
> As to the rating, the Court is of the opinion that this is … a situation of an opinion about which reasonable persons can differ, and I don't find it a matter of false statements. But even assuming that the statements were false, **the Court finds no evidence of reckless disregard or actual malice, which is necessary in order to proceed**.
>
> As it relates to the press release, the Court is of the same opinion that while the statements may have been changed, the substance of the press release was the same, and **the change was not so material that it entered into the area of actual malice**.
>
> So accordingly, **this Court finds that the evidence is insufficient on defamation and commercial disparagement as it relates to the rating and the press release for the claims to go to the jury**. And accordingly, the Court grants the Rule 50(a) motion in this matter.

See Exhs. A and B attached hereto (Transcript of Court's May 28, 2013 Decision; Order Granting Rule 50(a) Motion (Doc. 85)) (emphasis added).

Regis discusses at length and, at times, mischaracterizes the Court's previous rulings on A.M. Best's motion for summary judgment and motion for certification for interlocutory appeal. While A.M. Best may disagree with those rulings, they matter little for purposes of determining whether Regis, which bore the burden of proving actual malice by clear and convincing evidence as part of its case in chief, ultimately presented sufficient evidence of actual malice at trial.[1]

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 59 provides: "The court may, on motion, grant a new trial on all or some of the issues ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59.[2] For example, Rule 59 permits a court to grant a new trial if the jury's verdict was against the weight of the evidence, or if substantial errors occurred in the admission or exclusion of evidence, or in the jury instructions. Kimble v. Morgan Props., No. 02–9359, 2005 WL 2847266, at * 2 (E.D. Pa. Oct. 25, 2005) (citing Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940)).  Among the commonly raised grounds for a court to grant a new trial include "(1) a prejudicial error of law; (2) the verdict is against the weight of the evidence; (3) the verdict is too large or too small; (4) there is newly discovered evidence; (5) that conduct of counsel or the court has tainted the verdict; or (6) there has been misconduct affecting the jury." Brown v.

---

[1] Bizarrely, Regis suggests that because A.M. Best's "fact-based defenses have not been tried", Doc. 90 at 11, the Court erred in granting A.M. Best's Rule 50(a) motion.  However, there was no need for A.M. Best to try those defenses, for which it, not Regis, bears the burden of proof, if Regis failed to present sufficient evidence of its claims.  To argue otherwise ignores the purpose of the Rule 50(a) motion which may be made at the close of plaintiff's case or any time after a party has been fully heard on an issue. Fed. R. Civ. P. 50(a)(1).

[2] See generally L. Civ. R. 7.1.

Old Castle Precast. East, Inc., No. 00–2549, 2003 WL 22999302, at *2 (E.D. Pa. Jan.14, 2003) (citing Kiss v. Kmart Corp., No. 97–7090, 2001 WL 568974, at *1 (E.D. Pa. May 22, 2001)). Here, Regis argues that the Court erred in granting A.M. Best's Rule 50(a) motion at the close of plaintiff's case in chief.

However, Federal Rule of Civil Procedure 50(a) provides an opportunity for a party to challenge the sufficiency of evidence to be evaluated by the jury.  In the Third Circuit, a grant of judgment as a matter of law ("JMOL") is appropriate where a party has been fully heard on an issue during a jury trial and the Court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on an issue.  Gagliardo v. Connaught Labs., 311 F.3d 565, 568 (3d Cir. 2002).

In deciding a Rule 50 motion, "[t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party."  Foster  v. Nat'l Fuel Gas Co., 316 F.3d 424, 428 (3d Cir. 2003) (quoting Patzig v. O'Neil, 577 F.2d 841, 846 (3d Cir. 1978)).  In viewing all the evidence which has been tendered and should have been admitted, the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).  Federal courts do not follow the rule that a scintilla of evidence is sufficient for the Court to deny the motion.  Id.

As discussed below, the Court did not err in determining, at the close of Regis' case in chief, that Regis had failed to present evidence upon which the jury could properly render a verdict in its favor and, as a result, Regis' motion for a new trial should be denied.

## IV.    DISCUSSION[3]

### A.    The Court Did Not Err In Granting A.M. Best's Motion For Judgment At The Close Of Plaintiff's Evidence.

Regis now argues, in effect, that because the Court denied A.M. Best's motion for summary judgment on Regis' defamation and commercial disparagement claims, it did not have the discretion to grant A.M. Best's Rule 50(a) motion at the close of plaintiff's case and must allow its claims to go to the jury. Regis, however, fails to cite any caselaw for this purported rule of law.

To the contrary, multiple federal courts have recognized the authority of a District Court to grant a party's motion for a directed verdict after denying the party's motion for summary judgment. See, e.g., Runyon v. Applied Extrusion Technologies, Inc., 619 F.3d 735, 739 (7th Cir. 2010) ("To the extent that Runyon is arguing that the district court was not free to change its mind after it ruled on the summary judgment motion, he is mistaken."); accord Abel v. Dubberly, 210 F.3d 1334, 1337-38 (11th Cir. 2000); St. Louis Convention & Visitors Comm'n v. National Football League, 154 F.3d 851, 860 (8th Cir. 1998) (same); Sagendorf-Teal v. County of

---

[3] At the outset, A.M. Best notes that Local Civil Rule 7.1(e) provides:

> Within fourteen (14) days after filing any post-trial motion, the movant shall either (a) order a transcript of the trial by a writing delivered to the Court Reporter Supervisor, or (b) file a verified motion showing good cause to be excused from this requirement. Unless a transcript is thus ordered, or the movant excused from ordering a transcript, the post-trial motion may be dismissed for lack of prosecution.

To the best of our knowledge, Regis has not ordered the transcript or provided the required verified motion, instead signaling its expectation in its moving brief that the Court should rely solely on Regis' own recollection of the six days of trial. (Doc. 90 at 23 n. 4.)  Such an expectation is, at best, "irresponsible" and, at worst, grounds for dismissal. See Lawler v. Richardson, No. 10-196, 2012 WL 2362383, at *1 n. 4 (E.D. Pa. June 20, 2012) (Tucker, J.). Accordingly, A.M. Best requests that the Court consider dismissing Regis' motion on this ground as well.

<u>Rensselaer</u>, 100 F.3d 270, 277 (2d Cir. 1996) (same); <u>Sandoval v. U.S. Smelting, Refining &</u>
<u>Mining Co.</u>, 544 F.2d 463, 464 (10th Cir. 1976) ("Appellant here contends the trial court erred
by granting a directed verdict when it had earlier denied appellee's motion for summary
judgment. She argues that since evidence garnered at the discovery stage was virtually identical
to that introduced at trial, the court's directed verdict, when summary judgment was previously
denied, was improper. However, a denial of summary judgment does not rule out the possibility
of a directed verdict."); <u>Reeves v. City of Jackson</u>, 532 F.2d 491, 494 (5th Cir. 1976) ("The
District Court should give the plaintiff the full fanfare of a federal court claim at least until it can
see what the real facts are. If, after a full development of the facts the plaintiff's cause is too
weak ..., it may be washed out on summary judgment ... or if it gets beyond that, by motion for
directed verdict either at the end of the plaintiff's case, or at the close of the evidence, or by
J.N.O.V. after verdict.") (internal citations omitted); <u>Lee v. Glessing</u>, 51 Fed. Appx. 31, 32 (2d
Cir. Nov. 6, 2002) (rejecting on summary order plaintiff's challenge as "approach[ing] frivolous"
to district court's grant of defendant's motion for judgment as a matter of law at the close of
plaintiff's case after having denied summary judgment motion where district court had no doubt
about the insufficiency of the evidence supporting plaintiff's claims).

Indeed, neither the Court's decision denying A.M. Best motion for summary judgment as
to two out of four of Regis' claims (Doc. 50) nor its Order denying A.M. Best's motion for
certification for interlocutory appeal (Doc. 60) were law of the case. Rule 54(b) of the Federal
Rules of Civil Procedure provides that "any order or other decision...that adjudicates fewer than
all the claims... does not end the action as to any of the claims ... and may be revised at any time
before the entry of a judgment adjudicating all the claims...". <u>See also</u> Wright, Miller et al.,

18B Fed. Prac. & Proc. Juris. § 4478.1 (2d ed.) (discussing a district court's power to revise earlier decisions prior to entry of judgment adjudicating all claims).

Moreover, the Court's review at the summary judgment stage was limited to the briefs and exhibits submitted by the parties.   With the benefit of reading the parties' pre-trial submissions, hearing the trial testimony and cross-examination of Regis' witnesses, and seeing the exhibits used by the parties at trial[4], the Court was free to conclude, as it did, that A.M. Best's rating was an opinion and that Regis presented insufficient evidence of actual malice in connection with the publication of both the rating and the Press Release.

**B.     Plaintiff Utterly Failed To Prove That Any Statement Published By A.M. Best Concerning It Was Defamatory or False.**

Here, Regis had the burden of proving that A.M. Best's statements concerning it are <u>both</u> defamatory and false, as well as fault.  <u>See Philadelphia Newspapers, Inc. v. Hepps</u>, 475 U.S. 767, 776 (1986).  As was the case in late 2009 and early 2010, Regis' focus at trial was on the B-FSR itself.  However, it also argued that it was entitled, after having offered no comments or revisions to A.M. Best's draft press releases, to a press release which stated <u>its</u> opinion (or that of Mr. Di Loreto or a friendly regulator) and not that of A.M. Best.  Such an argument concerning a difference of opinion is not sufficient to sustain claims for defamation or commercial disparagement.

**1.     A.M. Best's 2010 Rating Of Regis Is An Opinion Entitled To First Amendment Protection.**

As the Court recognized, Regis ultimately presented no evidence to undermine the protection that should be afforded to A.M. Best's rating of Regis in 2010.  If anything, Regis only developed more evidence to support A.M. Best's position that its B- FSR was an honestly held

---

[4] For the Court's convenience, A.M. Best submits the Certification of Stephanie R. Wolfe and attaches thereto the exhibits A.M. Best used in questioning witnesses at trial.

and methodically developed opinion incapable of being proven true or false.  See Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974) ("[T]here is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.").  The Sixth Circuit recognized that a credit rating is inherently subjective in Compuware Corp. v. Moody's Investors Services, Inc., 499 F.3d 520 (6th Cir. 2007), a case with facts strikingly similar to those presented here, see id. at 522-24, and applied First Amendment protection to the statements at issue:

> A Moody's [credit] rating is a predictive opinion, dependent on a subjective and discretionary weighing of complex factors. We find no basis upon which we could conclude that the credit rating itself communicates any provably false connotation. Even if we could draw any fact-based inferences from this rating, such inferences could not be proven false because of the inherently subjective nature of Moody's ratings calculation.

Id. at 529.  The Compuware court held that rating opinions could not provide the basis for a cognizable claim premised solely on their asserted falsity.  Id.; accord Jefferson Co. Sch. Dist. v. Moody's Investors Servs., Inc., 175 F.3d 848, 852, 855-56 (10th Cir. 1999) (holding that "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection" and that a rating agency's evaluation of creditworthiness is a "protected expression of opinion").  Indeed, the Court recognized before the trial started that to the extent Regis attacked the FSR itself, it did not assert a cognizable claim.  (Doc. 60 at 2.)

### 2. Regis Failed To Prove That A.M. Best's Statements Published In The January 12, 2010 Press Release Are Defamatory Or False.

In addition, Regis challenged four statements in the January 12, 2010 Press Release, but failed to meet its burden of proving that these statements were defamatory or false in this

context.

The Press Release statements, providing a short summary of the reasons for A.M. Best's rating opinion, are entirely derivative of that opinion and, as a result, are not capable of a defamatory meaning. See the many cases where courts have found that ratings or rankings and related statements are inherently subjective and not capable of a defamatory meaning: Aviation Charter, Inc. v. Aviation Research Group, 416 F.3d 864, 871 (8th Cir. 2005); Browne v. Avvo, Inc., 525 F. Supp. 2d 1249, 1251-53 (W.D. Wa. 2007); ZL Techs., Inc. v. Gartner, Inc., 709 F. Supp. 2d 789, 795-99 (N.D. Cal. 2010); ZL Technologies, Inc. v. Gartner, Inc., No. CV 09-02393JF, 2009 WL 3706821, at *9, (N.D. Cal. Nov. 4, 2009), aff'd 433 Fed. Appx. 547 (9th Cir. May 13, 2011), cert. denied 132 S.Ct. 455 (U.S. 2011); Kronenberg v. Baker & McKenzie, LLP, 692 F. Supp.2d 994, 998 (N.D. Ill. 2010); Seaton v. TripAdvisor, LLC, No. 3:11-cv-549, 2012 WL 3637394, at *5-7 (E.D. Tenn. Aug. 22, 2012) ("[a]ny reasonable person can distinguish opinions based on reasons from facts based on reasons—just because TripAdvisor states its reasons for including Grand Resort on its list [of dirtiest hotels] does not make the assertion one of objective fact."). See also A.M. Best's Memorandum of Law in Support of its Motion for Certification for Interlocutory Appeal (Doc. 53-1) at 8-12.

Although Regis never challenged the language in the draft press releases sent to it for suggested revisions to that language, it argued for the first time in this litigation that the following statements defamed it:

> These rating actions reflect the [1] recent disclosure of the lack of financial flexibility at Regis' privately held parent, Tiber Holding Corporation (Wilmington, DE), due to that organization's high consolidated financial leverage, [2] lack of access to additional capital and [3] other operating issues. Additionally, these ratings actions consider Regis' [4] continued poor operating performance.

Wolfe Cert. Exh. R (enumeration added).  These statements, the first three of which were about

Tiber, were not only derivative of the rating opinion itself but, as the evidence has demonstrated,

also offered alongside "positive rating factors" in the Press Release.[5]

To determine whether a communication or any portion of it or its implication is

defamatory, it must be viewed in context.

> Words which standing alone may reasonably be understood as
> defamatory may be so explained or qualified by their context as to
> make such an interpretation unreasonable. Thus, we must consider
> the full context of the article to determine the effect the article is
> fairly calculated to produce, the impression it would naturally
> engender, in the minds of the average persons among whom it is
> intended to circulate.

Thomas Merton Center v. Rockwell Int'l Corp., 497 Pa. 460, 465, 442 A.2d 213, 216 (1981)

(citations and quotation marks omitted).  Moreover, to establish the falsity of a challenged

statement, it is not enough to show that the statement contains slight inaccuracies.  As long as the

allegedly defamatory statement or implication was "substantially true," the plaintiff cannot

recover.  Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516-17 (1991).  The law does not

require perfect truth, so long as any inaccuracies do not render the substance and "gist" of the

statements untrue.  Id.  It makes no difference that the true facts were not known until the trial.

A person does not have a legally protected right to a reputation based on the concealment of the

truth.  This is part of the rule that truth—not just known truth—is a complete defense to

---

[5] For example, the Press Release noted that "Regis' conservative underwriting leverage and niche
market expertise in the small to mid-size commercial segment" somewhat offset negative factors.
The Press Release also stated that "[w]hile underwriting results have largely been negative, total
return measures have generally been positive over a 10-year period with consideration of capital
gains."  A.M. Best also identified in the Press Release such positive rating factors as
"management's strong underwriting culture and insistence upon proper pricing, reserving and
terms and conditions."  See Wolfe Cert. Exh. R.

defamation.[6] Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1228 (7th Cir. 1993); Restatement (Second) of Torts § 581A.

The testimony of Ms. Rinaldo and Messrs. Helstrom, Liebowitz and Altonji confirmed that the Judgments against Tiber, which produced the "lack of financial flexibility" to which A.M. Best was referring, had only recently been disclosed to A.M. Best before it issued the January 12, 2010 Press Release.[7]

Moreover, the phrases A.M. Best used to describe Tiber — "lack of financial flexibility", "high consolidated financial leverage", "lack of access to additional capital" and "other operating issues" — are not only accurate but diplomatic under the circumstances and do not directly concern Regis' independent operating performance, which, as Regis' own witnesses have testified, had continued to deteriorate in 2009. There was no dispute at trial that Tiber lacked financial flexibility, had high consolidated financial leverage, lacked access to additional capital, and had operating issues. Rather, the evidence demonstrated that (1) Tiber was insolvent and defunct, (2) Tiber had an outstanding debt of $4.5 Million due in 2012 (regardless of whether that obligation was ultimately fulfilled), (3) the Judgments against Tiber prevented a sale of Regis in 2005, and (4) Regis would be unable to raise capital as a result of the Judgments against Tiber. In addition, the uncontroverted evidence demonstrated that Regis sustained a net underwriting loss of approximately $1.3 Million and a pretax operating loss of income of

---

[6] Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 776 (1986); Kendall v. Daily News Publishing Co., 716 F. 3d 82 (3d Cir. 2013).

[7] A.M. Best makes clear to the public that it relies on information the company provides to it. Regis, however, objects to the phrase "recent disclosure" on the grounds that A.M. Best should have uncovered information about which it had previously been misled, and that the sophisticated readers of the press release are incapable of calling an analyst, calling a Regis employee, or searching public documents to determine whether the disclosure of Tiber's lack of financial flexibility was recent only to A.M. Best or to the public in general.

$683,000 in 2009.  Regis had also suffered operating losses for eight of the nine years preceding the publication of the Press Release, including its largest annual operating loss of $1.3 Million in the year before the downgrade (2009).  Its premium volume had also been declining steadily long before the Press Release, including a decline in 2009.  As a result, A.M. Best's statement regarding Regis' "continued poor operating performance" is hardly false.

Because A.M. Best and other publishers should be afforded breathing space to express opinions on matters of public concern, even if that expression consists of muted and technical language, the Court correctly entered judgment as a matter of law in favor of A.M. Best with respect to A.M. Best's Press Release statements.  See, e.g., Philadelphia Newspapers, 475 U.S. at 778 ("To provide 'breathing space,' for true speech on matters of public concern, the [Supreme] Court has been willing to insulate even *demonstrably* false speech from liability, and has imposed additional requirements of fault upon the plaintiff in a suit for defamation.") (emphasis in original) (internal citations omitted).

**C.     Regis Failed To Provide Sufficient Evidence Of Actual Malice And, As A Result, A.M. Best Was Entitled To Judgment As A Matter Of Law.**

Even if the Court assumes that any of A.M. Best's statements regarding Regis are actionable statements of fact, those statements were appropriate in light of the information available to A.M. Best at the time and that which has become available in the course of the litigation.  In light of the evidence presented by plaintiff and testimony of its witnesses, no reasonable jury could find that A.M. Best had (1) improperly communicated to its audience the bases for its decision to downgrade Regis, (2) recklessly framed its rating and Press Release in such a way as to create the false impression that Regis experienced certain financial difficulties in 2009, or (3) intentionally or recklessly worded the Press Release in this way because it was in the best interests of the company to do so.  See ECF Doc. 60 at 3.

13

In short, Regis failed to present evidence that A.M. Best acted with actual malice, and, consequently, did not show A.M. Best abused its privilege to comment on matters of public concern.[8] Tucker v. Fishbein, 237 F.3d 275, 285-86 (3d Cir. 2001). Even an extreme departure from professional standards, without more, will not support a finding of actual malice. See Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 665 (1989). Likewise, a failure to investigate, standing alone, does not constitute actual malice.   See St. Amant v. Thompson, 390 U.S. 727, 730-31 (1968); Marcone v. Penthouse Int'l Magazine for Men, 754 F.2d 1072, 1089 (3d Cir.1985). This must be so, particularly here, where a publisher states that it relies upon information provided to it by plaintiff.

### 1.     The Rating

With respect to the rating, there is no hint that A.M. Best departed from its standard methodologies. Ironically, Regis appears to find fault with A.M. Best precisely because it acted in accordance with its policies and procedures and made substantial efforts to cooperate with Regis as part of its rating process. Among other things, A.M. Best personnel met or spoke with members of Regis' senior management, communicated with Di Loreto on multiple occasions, spoke with Stephen Johnson of the Pennsylvania Insurance Department twice, conferred with Regis' accountant several times, conducted three separate rating committee meetings regarding Regis, considered Regis' appeal of its rating, and revised its initial rating of Regis. Indeed, A.M. Best did consider Regis' appeal of its initial rating and revised the rating from a C+ to a B- after a second conversation with Johnson on January 5, 2010 and a second meeting of a rating committee consisting of the most senior members of the Ratings Division on January 6. In addition, A.M. Best gave Regis multiple opportunities to provide information.

---

[8] Regis recognizes at page 10 of its moving brief that the standard of proof for both its defamation and commercial disparagement claims is substantially similar.

In the course of this litigation, Regis identified only two items A.M. Best might have done differently: to have (1) accepted Regis' own opinion, as advocated by Stephen Johnson, Deputy Commissioner of the Pennsylvania Insurance Department, that Tiber's financial condition had no impact on Regis in the face of compelling evidence to the contrary; and (2) contacted the NY DOI/Liquidator to find out whether it intended to pursue the acquisition of Regis' assets despite the fact that (a) neither Regis nor its expert had done so and (b) Regis never suggested, let alone requested, A.M. Best do so during the rating process.  A.M. Best is under no obligation to ignore its methodology and accept the opinions of the insurers it rates.

Indeed, as Johnson admitted, he was not attempting to tell A.M. Best how to rate Regis but rather persuade A.M. Best employees that they should view Regis as he did when he spoke to them on December 11, 2009 and January 5, 2010 and wrote his letter of January 25, 2010. Indeed, he recognized that A.M. Best, as a credit rating agency, must evaluate an insurance company based on its own methodologies and was not bound by his opinion.  In his discussions with A.M. Best, however, he assumed that Regis and Tiber were two separately organized and operated companies despite knowing Tiber's actual financial condition and the concerns his own Department had expressed about Regis' payment of the expenses of both Tiber and Mr. Di Loreto as well as its charitable contributions to the Di Loreto Foundation, the majority shareholder of Tiber.  He also acknowledged that the NY DOI/Liquidator had blocked the sale of Regis in 2005 because of the Judgments against Tiber and could force a sale of Regis in the future.  In any event, he admitted that the Department should not become a substitute for a credit rating agency like A.M. Best in issuing ratings about the claims-paying ability of an insurer, and he and other Regis witnesses acknowledge that A.M. Best and the Pennsylvania Insurance

Department have different roles to play in assessing the claims-paying ability of an insurer.[9] A.M. Best, in applying its methodology and considering Regis and Tiber in 2009 and 2010, did not make the same assumptions as Mr. Johnson and are not bound to accept his opinion. Regis' claim here is premised on A.M. Best being bound to accept his opinion.

In addition to ignoring the actual testimony of Mr. Johnson, Regis is incorrect in asserting its expert, Michael Cohen, provided any evidence of actual malice or recklessness. See discussion at pages 19 through 20 of Regis' moving brief. In fact, he neither opined that A.M. Best had acted recklessly nor identified any problem with the Press Release. During his testimony, Mr. Cohen's only objection to A.M. Best's rating process was that it did not contact the New York DOI/Liquidator.[10] He raised this objection despite admitting that he did not know what the NY DOI/Liquidator would have said if that contact had been made or what effect an assurance from the agency of no action would have had on the rating process. Indeed, Cohen acknowledged that the A.M. Best analysts made a judgment call in determining the potential impact of the Tiber Judgments on Regis and that A.M. Best was not bound by the opinion of Johnson or the Pennsylvania Insurance Department in rating Regis. He further acknowledged that A.M. Best's ratings are opinions about which reasonable people can disagree. Finally, Cohen was unable to identify a specific methodology that A.M. Best had failed to follow in (a) not contacting the New York DOI/Liquidator; (b) not accepting Mr. Johnson's opinion wholesale; and (c) not including statements that Regis now says should have been included in the

---

[9] See generally Exhibit C attached hereto (Transcript of Cross-Examination of Stephen Johnson).

[10] Incredibly, in light of the Court's view set forth in its Summary Judgment Opinion that A.M. Best was not required to contact the New York Department of Insurance and that doing so would have been fraught with risk, Doc. 50 at 18 n.11, Cohen and Regis focused almost exclusively during his testimony on A.M. Best's failure to contact the New York DOI/Liquidator to determine whether it intended to pursue its Tiber Judgments against Regis.

16

Press Release.  Rather, he pointed to general language in A.M. Best's methodology concerning the need to understand a holding company in rating the insurance company.  As a result and contrary to its assertion at page 8 of its moving brief, it can hardly be said that Regis "followed the Court's instruction to the letter" in addressing factual issues identified in the Court's earlier rulings.

With respect to Regis' suggestion that A.M. Best should have contacted the NY DOI/Liquidator, this is at most an example of Monday-morning quarterbacking.  Regis has not contacted the NY DOI/Liquidator and never requested A.M. Best do so.  This should be contrasted with Regis' request that A.M. Best contact Johnson and the Pennsylvania Insurance Department.  It is also not A.M. Best's policy to contact third parties without the rated entity's express permission, especially in view of the obvious risks involved here.

Accordingly, Regis failed to provide sufficient evidence that A.M. Best had any intent to harm Regis or that A.M. Best acted with "actual malice" in reaching its ultimate decision to downgrade Regis to a B-.

### 2.    The Press Release

Regis also failed to present evidence that the Press Release statements were made with actual malice.  Again, the Sixth Circuit's Opinion in <u>Compuware</u> is instructive.  There, the court rejected Compuware's argument that "Moody's report omitted key facts and implied incorrect connotations about Compuware's business practices" and agreed that plaintiff had failed to show by clear and convincing evidence that Moody's intended or knew of the implications that plaintiff later alleged, finding:

> Compuware has not met this burden, utterly failing to demonstrate that Moody's intended or knew of the implied messages Compuware attributes to the ratings report [and] has not even shown that an objective reader of the ratings report might discern

> these hidden implications; indeed only a "strained reading" of the
> report would permit [such] inferences....

Compuware, 499 F.3d at 528; accord Kendall, 716 F.3d at 90 (holding that in order to prove actual malice in a defamation-by-implication case, plaintiff must show by clear-and-convincing evidence both that (1) the defendant either intended the defamatory meaning or knew of the defamatory meaning and was reckless with regard to it, and (2) the defendant made the statement with knowledge that the statement was false or with reckless disregard of whether it was false or not).

Here, A.M. Best followed its standard practice and format in preparing the Press Release. Despite this, Regis has attempted to raise the specter of actual and/or common law malice by pointing to (1) one analyst's "heated" conversation with Mr. Di Loreto upon learning of Tiber's true financial condition for which the analyst quickly apologized and (2) Matthew Mosher's omission of certain language from the final Press Release.  Regis' arguments, however, are premised upon the mistaken notion that in a press release, A.M. Best is to present the rated company's grounds for objecting to the rating action.

Other than for base innuendo, Regis presented no evidence to suggest that A.M. Best did not honestly believe that the Press Release revisions were appropriate and carefully made in order to convey A.M. Best's opinion that the lack of financial flexibility at Tiber does have an impact on Regis' financial strength.  Moreover, to have provided the additional detail about Tiber upon which Regis now insists should have been provided would have run the risk of violating A.M. Best's Code of Conduct by disclosing confidential information contained in Tiber's consolidated financial statements.  Providing more detail also ran the risk of casting Regis in an even more negative light.

18

Not including an express reference to Regis' strong stand-alone capitalization and increased surplus in the draft Press Release in light of the fact that other positive rating factors concerning Regis were published and those strong capitalization and surplus figures were contained in the full report on Regis is hardly the basis for a finding that A.M. Best was motivated by an intent to create a false impression that Regis had suffered certain financial difficulties in 2009, beyond those continued difficulties Regis actually did experience, or was reckless with regard to such a meaning.  A.M. Best had also concluded that the capitalization and surplus were ultimately outweighed by Regis and Tiber's problems in arriving at its opinion concerning the vulnerability of Regis.  Moreover, some of the positive statements in the Press Release would have led readers to believe Regis' capital surplus position was strong.  For example, the Press Release stated that "[w]hile underwriting results have largely been negative, total return measures have generally been positive over a 10-year period with consideration of capital gains."  As previously noted, the Press Release contained a summary of A.M. Best's reasons for the rating downgrade and not Regis' reasons for objecting.

In short, Regis presented no evidence that A.M. Best sought to mislead readers or acted with actual malice toward the truth, much less of clear and convincing evidence of actual malice when it made this or any other statement in the Press Release.

In addition, Regis undermines its own contention that the Court had the same record before it after six days of trial as it did at the time it decided A.M. Best's motion for summary judgment.  Indeed, it attaches one document to its motion – Plaintiff's Exhibit 41 -- which reflects A.M. Best's Senior Vice President of Global Ratings Matthew Mosher's December 16, 2009 revisions to a draft press release ultimately included in the final version of the Press Release issued on January 12, 2010.  However, it ignores the fact that (a) it failed to address this

document at all in opposing A.M. Best's summary judgment motion; (b) it failed to call Mr. Mosher during its case in chief to support its claim of actual malice if it believed these revisions were so significant; and (c) the Court expressly considered these changes and found that they were "not so material that [they] entered into the area of actual malice." In sum, as the Court recognized, A.M. Best's wording choices here cannot be the basis for a finding of reckless disregard of the truth, particularly where Regis never suggested any revisions when given the opportunity to do so.

Moreover, Regis presented no evidence that anyone was misled by any statement in the Press Release. In fact, Regis presented no evidence that anyone had read the Press Release. A defamation plaintiff, however, must prove "a recipient's understanding of the communication's defamatory meaning" see 42 Pa.C.S. § 8343(a), but Regis utterly failed to do so.

Accordingly, the Court did not err in finding insufficient evidence of actual malice in connection with A.M. Best's publication of the Press Release.

## V.      CONCLUSION

For these reasons, A.M. Best respectfully requests this Honorable Court deny Regis' motion for a new trial.

RESPECTFULLY SUBMITTED,

BY:___LEB2615_____
LOUIS E. BRICKLIN, ESQUIRE
I.D. #20281
1601 Market Street, 16th Floor
Philadelphia, PA 19103-2393
(215) 561-4300
bricklin@bbs-law.com

MICHAEL K. FUREY, ESQUIRE
STEPHANIE R. WOLFE, ESQUIRE
Riker, Danzig, Scherer, Hyland & Perretti LLP
Headquarters Plaza, One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800
Attorneys for A.M. Best Company, Inc.

Date:  July 19, 2013